**NOTICE:**

Please be advised that this corrected document is filed in connection with the redaction of certain potentially confidential personal information in a document previously filed in your bankruptcy case by the creditor identified herein. This corrected document is otherwise identical to the original document in all respects. The substance of the document has not been changed in any way.

B10 (Official Form 10) (04/13)

| UNITED STATES BANKRUPTCY COURT Middle District of Pennsylvania | | PROOF OF CLAIM |
|---|---|---|

| Name of Debtor: Terrance W. Obie, aka Terrance Ward Obie aka Terrance Obie fdba Obie One Home Services Calandra D. Obie aka Calandra Danielle Obie aka Calandra Obie | Case Number: 5:15-bk-03521-RNO |
|---|---|

NOTE: *Do not use this form to make a claim for an administrative expense that arises after the bankruptcy filing. You may file a request for payment of an administrative expense according to 11 U.S.C. § 503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
PNC Bank, N.A.

**COURT USE ONLY**

Name and address where notices should be sent:
PNC Bank, N.A.
3232 Newmark Drive
Miamisburg, OH 45342

Telephone number:                email:

❏ Check this box if this claim amends a previously filed claim.

**Court Claim Number:**_____
   (*If known*)

Filed on:_____

Name and address where payment should be sent (if different from above):

Telephone number:                email:

❏ Check this box if you are aware that anyone else has filed a proof of claim relating to this claim. Attach copy of statement giving particulars.

**1. Amount of Claim as of Date Case Filed:**                $               219,391.34

If all or part of the claim is secured, complete item 4.

If all or part of the claim is entitled to priority, complete item 5.

☑ Check this box if the claim includes interest or other charges in addition to the principal amount of the claim. Attach a statement that itemizes interest or charges.

**2. Basis for Claim:** __Mortgage and Note__
   (See instruction #2)

| **3. Last four digits of any number by which creditor identifies debtor:** 7 8 0 4 | **3a. Debtor may have scheduled account as:** _____ (See instruction #3a) | **3b. Uniform Claim Identifier (optional):** _____ (See instruction #3b) |
|---|---|---|

**4. Secured Claim** (See instruction #4)
Check the appropriate box if the claim is secured by a lien on property or a right of setoff, attach required redacted documents, and provide the requested information.

**Amount of arrearage and other charges, as of the time case was filed, included in secured claim, if any:**
$               36,196.16

**Nature of property or right of setoff:** ☑ Real Estate  ❏ Motor Vehicle  ❏ Other
**Describe:**  Lot 13 Knoll Acres At Wooddale N/K/A 808 Knoll Dr, East Stroudsburg, PA 18301

**Basis for perfection:**  Recorded Mortgage

**Value of Property:** $_____

**Amount of Secured Claim:** $               219,391.34

**Annual Interest Rate** __3.000__%  ❏ Fixed  or  ☑ Variable
**(when case was filed)**

**Amount Unsecured:** $_____

**5. Amount of Claim Entitled to Priority under 11 U.S.C. § 507 (a).** If any part of the claim falls into one of the following categories, check the box specifying the priority and state the amount.

❏ Domestic support obligations under 11 U.S.C. § 507 (a)(1)(A) or (a)(1)(B).

❏ Wages, salaries, or commissions (up to $12,475*) earned within 180 days before the case was filed or the debtor's business ceased, whichever is earlier – 11 U.S.C. § 507 (a)(4).

❏ Contributions to an employee benefit plan – 11 U.S.C. § 507 (a)(5).

❏ Up to $2,775* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use – 11 U.S.C. § 507 (a)(7).

❏ Taxes or penalties owed to governmental units – 11 U.S.C. § 507 (a)(8).

❏ Other – Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/01/16 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits.** The amount of all payments on this claim has been credited for the purpose of making this proof of claim. (See instruction #6)

**7. Documents:** Attached are redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, security agreements, or, in the case of a claim based on an open-end or revolving consumer credit agreement, a statement providing the information required by FRBP 3001(c)(3)(A). If the claim is secured, box 4 has been completed, and redacted copies of documents providing evidence of perfection of a security interest are attached. If the claim is secured by the debtor's principal residence, the Mortgage Proof of Claim Attachment is being filed with this claim. *(See instruction #7, and the definition of "redacted".)*

DO NOT SEND ORIGINAL DOCUMENTS.  ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

---

**8. Signature:** (See instruction #8)

Check the appropriate box.

☐ I am the creditor.  ☑ I am the creditor's authorized agent.  ☐ I am the trustee, or the debtor, or their authorized agent. (See Bankruptcy Rule 3004.)  ☐ I am a guarantor, surety, indorser, or other codebtor. (See Bankruptcy Rule 3005.)

I declare under penalty of perjury that the information provided in this claim is true and correct to the best of my knowledge, information, and reasonable belief.

Print Name:  Morris Scott
Title:  Esquire
Company:  Udren Law Offices, P.C.                                   /s/ Morris Scott                                   10/23/2015
Address and telephone number (if different from notice address above):   (Signature)                                      (Date)
111 Woodcrest Road, Suite 200
Cherry Hill, NJ 08003

Telephone number: (856) 669-5400     email: mscott@udren.com

*Penalty for presenting fraudulent claim:  Fine of up to $500,000 or imprisonment for up to 5 years, or both.  18 U.S.C. §§ 152 and 3571.*

---

### INSTRUCTIONS FOR PROOF OF CLAIM FORM

*The instructions and definitions below are general explanations of the law.  In certain circumstances, such as bankruptcy cases not filed voluntarily by the debtor, exceptions to these general rules may apply.*

**Items to be completed in Proof of Claim form**

**Court, Name of Debtor, and Case Number:**
Fill in the federal judicial district in which the bankruptcy case was filed (for example, Central District of California), the debtor's full name, and the case number. If the creditor received a notice of the case from the bankruptcy court, all of this information is at the top of the notice.

**Creditor's Name and Address:**
Fill in the name of the person or entity asserting a claim and the name and address of the person who should receive notices issued during the bankruptcy case.  A separate space is provided for the payment address if it differs from the notice address.  The creditor has a continuing obligation to keep the court informed of its current address. See Federal Rule of Bankruptcy Procedure (FRBP) 2002(g).

**1. Amount of Claim as of Date Case Filed:**
State the total amount owed to the creditor on the date of the bankruptcy filing. Follow the instructions concerning whether to complete items 4 and 5. Check the box if interest or other charges are included in the claim.

**2. Basis for Claim:**
State the type of debt or how it was incurred.  Examples include goods sold, money loaned, services performed, personal injury/wrongful death, car loan, mortgage note, and credit card.  If the claim is based on delivering health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information. You may be required to provide additional disclosure if an interested party objects to the claim.

**3. Last Four Digits of Any Number by Which Creditor Identifies Debtor:**
State only the last four digits of the debtor's account or other number used by the creditor to identify the debtor.

**3a. Debtor May Have Scheduled Account As:**
Report a change in the creditor's name, a transferred claim, or any other information that clarifies a difference between this proof of claim and the claim as scheduled by the debtor.

**3b. Uniform Claim Identifier:**
If you use a uniform claim identifier, you may report it here. A uniform claim identifier is an optional 24-character identifier that certain large creditors use to facilitate electronic payment in chapter 13 cases.

**4. Secured Claim:**
Check the appropriate box if the claim is fully or partially secured. Skip this section if the claim is entirely unsecured.  (See Definitions.)  If the claim is secured, check the box for the nature and value of property that secures the claim, attach copies of lien documentation, and state, as of the date of the bankruptcy filing, the annual interest rate (and whether it is fixed or variable), and the amount past due on the claim.

**5. Amount of Claim Entitled to Priority Under 11 U.S.C. § 507 (a).**
If any portion of the claim falls into any category shown, check the appropriate box(es) and state the amount entitled to priority.  (See Definitions.)  A claim may be partly priority and partly non-priority.  For example, in some of the categories, the law limits the amount entitled to priority.

**6. Credits:**
An authorized signature on this proof of claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

**7. Documents:**
Attach redacted copies of any documents that show the debt exists and a lien secures the debt. You must also attach copies of documents that evidence perfection of any security interest and documents required by FRBP 3001(c) for claims based on an open-end or revolving consumer credit agreement or secured by a security interest in the debtor's principal residence. You may also attach a summary in addition to the documents themselves. FRBP 3001(c) and (d). If the claim is based on delivering health care goods or services, limit disclosing confidential health care information. Do not send original documents, as attachments may be destroyed after scanning.

**8. Date and Signature:**
The individual completing this proof of claim must sign and date it.  FRBP 9011. If the claim is filed electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what constitutes a signature. If you sign this form, you declare under penalty of perjury that the information provided is true and correct to the best of your knowledge, information, and reasonable belief.  Your signature is also a certification that the claim meets the requirements of FRBP 9011(b). Whether the claim is filed electronically or in person, if your name is on the signature line, you are responsible for the declaration.  Print the name and title, if any, of the creditor or other person authorized to file this claim. State the filer's address and telephone number if it differs from the address given on the top of the form for purposes of receiving notices. If the claim is filed by an authorized agent, provide both the name of the individual filing the claim and the name of the agent. If the authorized agent is a servicer, identify the corporate servicer as the company. Criminal penalties apply for making a false statement on a proof of claim.

_____DEFINITIONS_____          _____INFORMATION_____

**Debtor**
A debtor is the person, corporation, or other entity that has filed a bankruptcy case.

**Creditor**
A creditor is a person, corporation, or other entity to whom debtor owes a debt that was incurred before the date of the bankruptcy filing. See 11 U.S.C. §101 (10).

**Claim**
A claim is the creditor's right to receive payment for a debt owed by the debtor on the date of the bankruptcy filing. See 11 U.S.C. §101 (5). A claim may be secured or unsecured.

**Proof of Claim**
A proof of claim is a form used by the creditor to indicate the amount of the debt owed by the debtor on the date of the bankruptcy filing. The creditor must file the form with the clerk of the same bankruptcy court in which the bankruptcy case was filed.

**Secured Claim Under 11 U.S.C. § 506 (a)**
A secured claim is one backed by a lien on property of the debtor. The claim is secured so long as the creditor has the right to be paid from the property prior to other creditors. The amount of the secured claim cannot exceed the value of the property. Any amount owed to the creditor in excess of the value of the property is an unsecured claim. Examples of liens on property include a mortgage on real estate or a security interest in a car. A lien may be voluntarily granted by a debtor or may be obtained through a court proceeding. In some states, a court judgment is a lien.

A claim also may be secured if the creditor owes the debtor money (has a right to setoff).

**Unsecured Claim**
An unsecured claim is one that does not meet the requirements of a secured claim. A claim may be partly unsecured if the amount of the claim exceeds the value of the property on which the creditor has a lien.

**Claim Entitled to Priority Under 11 U.S.C. § 507 (a)**
Priority claims are certain categories of unsecured claims that are paid from the available money or property in a bankruptcy case before other unsecured claims.

**Redacted**
A document has been redacted when the person filing it has masked, edited out, or otherwise deleted, certain information. A creditor must show only the last four digits of any social-security, individual's tax-identification, or financial-account number, only the initials of a minor's name, and only the year of any person's date of birth. If the claim is based on the delivery of health care goods or services, limit the disclosure of the goods or services so as to avoid embarrassment or the disclosure of confidential health care information.

**Evidence of Perfection**
Evidence of perfection may include a mortgage, lien, certificate of title, financing statement, or other document showing that the lien has been filed or recorded.

**Acknowledgment of Filing of Claim**
To receive acknowledgment of your filing, you may either enclose a stamped self-addressed envelope and a copy of this proof of claim or you may access the court's PACER system (www.pacer.psc.uscourts.gov) for a small fee to view your filed proof of claim.

**Offers to Purchase a Claim**
Certain entities are in the business of purchasing claims for an amount less than the face value of the claims. One or more of these entities may contact the creditor and offer to purchase the claim. Some of the written communications from these entities may easily be confused with official court documentation or communications from the debtor. These entities do not represent the bankruptcy court or the debtor. However, if the creditor decides to sell its claim, any transfer of such claim is subject to FRBP 3001(e), any applicable provisions of the Bankruptcy Code (11 U.S.C. § 101 *et seq*.), and any applicable orders of the bankruptcy court.

# Mortgage Proof of Claim Attachment

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim.** See Bankruptcy Rule 3001(c)(2).

| | | |
|---|---|---|
| **Name of debtor:** | Calandra D. Obie aka Calandra Danielle Obie aka Calandra Obie<br>Terrance W. Obie aka Terrance Ward Obie aka Terrance Obie fdba Obie One Home Services | **Case number: 5:15-03521 RNO** |
| **Name of creditor:** | PNC Bank, National Association | Last four digits of any number you use to identify the debtor's account: **7804** |

## Part 1: Statement of Principal and Interest Due as of the Petition Date

Itemize the principal and interest due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on your Proof of Claim form).

1. **Principal due** (1) **$199,884.50**

2. **Interest due**

| Interest rate | From<br>mm/dd/yyyy | To<br>mm/dd/yyyy | Amount |
|---|---|---|---|
| **2.000** % | **05/01/2014** | **11/30/2014** | **$2331.98** |
| 3.000% | 12/01/2014 | 08/17/2015 | + $4,280.85 |
| Total interest due as of the petition date | | **$6,612.83** Copy total here ▶ (2) | **$6,612.83** |

3. **Total principal and interest due** (3) **$206,497.33**

## Part 2: Statement of Prepetition Fees, Expenses, and Charges

Itemize the fees, expenses, and charges due on the claim as of the petition date (included in the Amount of Claim listed in Item 1 on the Proof of Claim form).

| Description | Dates incurred | | Amount |
|---|---|---|---|
| 1. **Late charges** | 08/19/2002 through 09/16/2014 | (1) | $204.08 |
| 2. **Non-sufficient funds (NSF) fees** | | (2) | $0.00 |
| 3. **Attorney's fees** | 10/02/2014 , 01/29/2015, 02/9/2015, 04/29/2015, 05/28/2015 | (3) | $1,920.00 |
| 4. **Filing fees and court costs** | 01/26/2015, 03/23/2015 | (4) | $178.25 |
| 5. **Advertisement costs** | | (5) | $0.00 |
| 6. **Sheriff/auctioneer fees** | 03/23/2015 | (6) | $2,000.00 |
| 7. **Title costs** | 10/02/2014, 6/10/2015 | (7) | $400.00 |
| 8. **Recording fees** | | (8) | $0.00 |
| 9. **Appraisal/broker's price option fees** | | (9) | $0.00 |
| 10. **Property inspection fees** | 04/24/2003 through  08/10/2015 | (10) | $186.00 |
| 11. **Tax advances (non-escrow)** | | (11) | $0.00 |
| 12. **Insurance advances (non-escrow)** | | | $0.00 |
| 13. **Escrow shortage or deficiency** Do not include accounts that are part of any installment payment listed in Part 3.) | | (13) | $149.96 |
| 14. **Property preservation expenses. Specify** | | (14) | $0.00 |
| 15. **Other. Service** | 10/02/2014, 01/26/2015, 06/25/2015 | (15) | $646.00 |
| 16. **Other. Skip Trace** | 07/13/2015 | (16) | $70.00 |
| 17. Total prepetition fees, expenses, and charges. Add all of the amounts listed above. | | (18) | $5,754.29 |

## Part 3. Statement of Amount Necessary to Cure Default as of the Petition Date

**Does the installment payment amount include an escrow deposit?**

☐ No

☒ Yes. Attach to the Proof of Claim form an escrow account statement prepared as of the petition date in a form consistent with applicable nonbankruptcy law.

---

| | | | | |
|---|---|---|---|---|
| **1. Installment payments due** | Date last payment received by creditor: | 05/30/2014 | | |
| | Number of installment payments due | (1) __15__ | | |
| **2. Amount of installment payments due** | __7__ Installments from 06/01/2014 through 12/014/2014 @ $1,992.49 | + $13,947.43 | | |
| | __1__ Installments from 01/01/2015 through 01/01/2015@ $2,089.58 | + $2,089.58 | | |
| | __7__ Installments from 02/01/2014 through 08/01/2014 @ $2,057.84 | + $14,404.88 | | |
| | __0__ Installments @ | + $0.00 | | |
| | Total installments due as of the petition date | $30,441.89 | Copy total here ▶ (2) | $30,441.89 |
| **3. Calculation of cure amount** | **Add** total prepetition fees, expenses, and charges | | Copy total from Part 2 here ▶  + | $5,754.29 |
| | **Subtract** total of unapplied funds (funds received but not credited to account | | - | $0.00 |
| | **Subtract** amounts for which debtor is entitled to a refund | | - | $0.00 |
| | Total amount necessary to cure default as of the petition date | | | $36,196.18 |
| | | | | Copy total onto item 4 of Proof of Claim form |

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE:  **Calandra D. Obie aka Calandra Danielle Obie aka Calandra Obie; Terrance W. Obie aka Terrance Ward Obie aka Terrance Obie fdba Obie One Home Services;** | CASE NO. **5:15-03521 RNO**<br><br>Chapter:  **13** |
| Debtor(s) | |

**Itemization of interest and/or charges included in Proof of Secured Claim of PNC Bank, National Association, Item (1) Amount of Claim as of Date Case Filed:**

**AMOUNT OF CLAIM AS OF DATE CASE FILED:**

| | |
|---|---|
| Principal of debt due and unpaid | $199,884.50 |
| Interest from 05/01/2014 to 11/30/2014 @2.000%  12/01/2014 through 08/01/2015 @3.000%(as set forth in B10A (Attachment A), Item (2) | $6,612.83 |
| Escrow Advance | $7,289.68 |
| Total prepetition fees, expenses, and charges | $5,604.33 |
| **TOTAL** | **$219,391.34** |

The calculations contained herein are as of the date of the filing of the Chapter 13 Petition (08/18/2015).

Dated:  10/23/2015

/s/ Morris Scott
Morris Scott, Esquire
mscott@udren.com
Udren Law Offices, P.C.
Woodcrest Corporate Center
111 Woodcrest Road, Suite 200
Cherry Hill, NJ 08003
(856)669-5400

TERRANCE OBIE ████████

CALANDRA D OBIE

808 KNOLL DR

EAST STROUDSBURG     PA 18302-7902


ANNUAL ESCROW ACCOUNT DISCLOSURE STATEMENT


ACCOUNT HISTORY


THIS IS A STATEMENT OF ACTUAL ACTIVITY IN YOUR ESCROW ACCOUNT FROM

01/01/14 THROUGH 08/31/15.

YOUR   MONTHLY   MORTGAGE PAYMENT FOR THE PAST YEAR WAS

    1,992.49 OF WHICH    1,020.32 WAS FOR PRINCIPAL AND INTEREST

  AND     972.17 WENT INTO YOUR ESCROW ACCOUNT.


| MO | PROJ ESCROW DEPOSIT | ACTUAL ESCROW DEPOSIT | PROJ ESCROW PAYMENTS | DESCRIPTION | ACTUAL ESCROW PAYMENTS | PROJ BALANCE | ACTUAL BALANCE |
|---|---|---|---|---|---|---|---|
| STARTING BALANCE ..................................... | | | | | | 1297.47 | 884.80 |
| JAN | 940.43 | * | 41.04 | PMI | * | 2196.86 | 884.80 |
| JAN | | | PMI | 41.04* | | 2196.86 | 843.76 |
| FEB | 940.43 | 1944.34 * | 41.04 | PMI | * | 3096.25 | 2788.10 |
| FEB | | | PMI | 41.04* | | 3096.25 | 2747.06 |
| MAR | 940.43 | 972.17 * | 41.04 | PMI | * | 3995.64 | 3719.23 |
| MAR | | | PMI | 41.04* | | 3995.64 | 3678.19 |
| APR | 940.43 | 972.17 * | 41.04 | PMI | * | 4895.03 | 4650.36 |
| APR | | 1271.94 | CITY TAX | 1271.94 | | 3623.09 | 3378.42 |
| APR | | | PMI | 41.04* | | 3623.09 | 3337.38 |

```
MAY  940.43  972.17 *   41.04 PMI          *  4522.48   4309.55

MAY                PMI      41.04*  4522.48   4268.51

JUN  940.43      *   41.04 PMI        *  5421.87   4268.51

JUN                PMI      41.04*  5421.87   4227.47

JUL  940.43      *   41.04 PMI        *  6321.26   4227.47

JUL                PMI      41.04*  6321.26   4186.43

AUG  940.43      *   41.04 PMI          *  7220.65   4186.43

AUG                PMI      41.04*  7220.65   4145.39

SEP  940.43      *   41.04 PMI        *  8120.04   4145.39

SEP             7220.65 SCHOOL TAX  7220.65   899.39   3075.26-
```

| | PROJ ESCROW DEPOSIT | ACTUAL ESCROW DEPOSIT | PROJ ESCROW PAYMENTS | DESCRIPTION | ACTUAL ESCROW PAYMENTS | PROJ ESCROW BALANCE | ACTUAL ESCROW BALANCE |
|---|---|---|---|---|---|---|---|
| MO | | | | | | | |
| SEP | | | PMI | 41.04* | 899.39 | 3116.30- | |
| OCT | 940.43 | * | 41.04 | PMI | * | 1798.78 | 3116.30- |
| OCT | | | PMI | 41.04* | 1798.78 | 3157.34- | |
| NOV | 940.43 | * | 41.04 | PMI | * | 2698.17 | 3157.34- |
| NOV | | | PMI | 41.04* | 2698.17 | 3198.38- | |
| NOV | | | HAZARD INS | 2450.00* | 2698.17 | 5648.38- | |
| DEC | 940.43 | * | 41.04 | PMI | * | 3597.56 | 5648.38- |
| DEC | | 2300.00 | HAZARD INS | * | 1297.56 | 5648.38- | |
| DEC | | | PMI | 41.04* | 1297.56 | 5689.42- | |
| JAN | | | PMI | 41.04* | 1297.56 | 5730.46- | |

| | | | | |
|---|---|---|---|---|
| FEB | | PMI | 41.04* 1297.56 5771.50- |
| MAR | | PMI | 41.04* 1297.56 5812.54- |
| APR | | PMI | 41.04* 1297.56 5853.58- |
| APR | | CITY TAX | 1271.94* 1297.56 7125.52- |
| MAY | | PMI | 41.04* 1297.56 7166.56- |
| JUN | | PMI | 41.04* 1297.56 7207.60- |
| JUL | | PMI | 41.04* 1297.56 7248.64- |
| AUG | 14360.37 *Y | PMI | 41.04*Y 1297.56 7070.69 |

LAST YEAR, WE ANTICIPATED THAT PAYMENTS FROM YOUR ACCOUNT WOULD BE
MADE DURING THIS PERIOD EQUALING     11,285.07. UNDER FEDERAL LAW,
YOUR LOWEST MONTHLY BALANCE SHOULD NOT HAVE EXCEEDED     1,880.86
(NO MORE THAN TWICE LAST YEARS PROJECTED MONTHLY ESCROW PAYMENT),
UNLESS YOUR MORTGAGE CONTRACT OR STATE LAW SPECIFIES A LOWER AMOUNT.
UNDER YOUR MORTGAGE CONTRACT AND STATE LAW, YOUR LOWEST MONTHLY
BALANCE SHOULD NOT HAVE EXCEEDED     899.39.

AN ASTERISK (*) INDICATES A DIFFERENCE FROM A PREVIOUS ESTIMATE
EITHER IN THE DATE OR THE AMOUNT. IF YOU WANT A FURTHER EXPLANATION,
PLEASE CALL OUR TOLL-FREE NUMBER.

ACCOUNT PROJECTION

MORTGAGE INS     :     492.48

TAXES          :    7,220.65

HAZARD INS      :     2,450.00

CITY TAX       :    1,271.94

---------------------------------------

ANNUAL DISBURSEMENTS :    11,435.07

11,435.07 / 12 =     952.93 ESCROW PAYMENT

| PAYMENTS | PAYMENTS | | | CURRENT BAL | REQUIRED BAL |
|---|---|---|---|---|---|
| MO | TO | FROM | DESCRIPTION | PROJECTION | PROJECTION |
| BALANCE AS OF 08/31/15......................... | | | | 7,070.69 | 7,220.65 |

| | | | | |
|---|---|---|---|---|
| SEP | 952.93 | 41.04 PMI | 7,982.58 | 8,132.54 |
| SEP | 7,220.65 | SCHOOL TAX | 761.93 | 911.89 |
| OCT | 952.93 | 41.04 PMI | 1,673.82 | 1,823.78 |
| NOV | 952.93 | 41.04 PMI | 2,585.71 | 2,735.67 |
| DEC | 952.93 | 41.04 PMI | 3,497.60 | 3,647.56 |
| DEC | 2,450.00 | HAZARD INS | 1,047.60 | 1,197.56 |
| JAN | 952.93 | 41.04 PMI | 1,959.49 | 2,109.45 |
| FEB | 952.93 | 41.04 PMI | 2,871.38 | 3,021.34 |
| MAR | 952.93 | 41.04 PMI | 3,783.27 | 3,933.23 |
| APR | 952.93 | 41.04 PMI | 4,695.16 | 4,845.12 |
| APR | 1,271.94 | CITY TAX | 3,423.22 | 3,573.18 |
| MAY | 952.93 | 41.04 PMI | 4,335.11 | 4,485.07 |
| JUN | 952.93 | 41.04 PMI | 5,247.00 | 5,396.96 |
| JUL | 952.93 | 41.04 PMI | 6,158.89 | 6,308.85 |
| AUG | 952.93 | 41.04 PMI | 7,070.78 | 7,220.74 |

THE EXPECTED AMOUNT IN YOUR ESCROW ACCOUNT IS    7,070.69 . YOUR
STARTING BALANCE ACCORDING TO THIS ANALYSIS SHOULD BE    7,220.65 .

THIS MEANS YOU HAVE A SHORTAGE OF     149.96.  THIS SHORTAGE MAY
BE COLLECTED FROM YOU OVER A PERIOD OF 12 MONTHS OR MORE UNLESS THE
SHORTAGE IS LESS THAN 1 MONTHS DEPOSIT, IN WHICH CASE WE HAVE THE
OPTION OF REQUESTING PAYMENT WITHIN 30 DAYS. WE HAVE DECIDED TO DO
NOTHING.

YOUR FIRST   MONTHLY    MORTGAGE PAYMENT FOR THE COMING YEAR WILL BE

    2,070.34 OF WHICH    1,117.41 WILL BE FOR PRINCIPAL AND

INTEREST AND      952.93 WILL GO INTO YOUR ESCROW ACCOUNT.

THE TERMS OF YOUR LOAN MAY RESULT IN CHANGES TO THE MONTHLY PRINCIPAL

AND INTEREST PAYMENTS DURING THE YEAR.


NEW PAYMENT INFORMATION

    PRINCIPAL AND INTEREST        1,117.41

    ESCROW PAYMENT                952.93

              -------------

NEW PAYMENT EFFECTIVE 09/01/15      2,070.34


KEEP THIS STATEMENT FOR COMPARISON WITH THE ACTUAL ACTIVITY IN YOUR

ACCOUNT AT THE END OF THE NEXT ESCROW ACCOUNTING COMPUTATION YEAR.

Prepared By:

**CHRISTINE M BASILE**
**National City Mortgage Co dba**
**Eastern Mortgage Services**
**3895 ALDER PLACE**
**BETHLEHEM, PA. 18017**
Parcel Number:

Return To:

NATIONAL CITY MORTGAGE CO.
ATTN: JUDI BISER
     CONSTRUCTION LOAN DEPT.
3232 NEWMARK DRIVE
MIAMISBURG, OH 45342

---

————————— [Space Above This Line For Recording Data] —————————

# MORTGAGE



ORIGINAL

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated     December 10, 2001     ,
together with all Riders to this document.
(B) **"Borrower"** is

**TERRANCE OBIE and CALANDRA D OBIE**

Borrower is the mortgagor under this Security Instrument.
(C) **"Lender"** is   **National City Mortgage Co dba**
                  **Eastern Mortgage Services**
Lender is a    corporation

**PENNSYLVANIA** - Single Family - **Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      Form 3039 1/01

Ⓥ**-6(PA)** (0008)

Page 1 of 16        Initials: *TO, CO*

    VMP MORTGAGE FORMS - (800)521-7291

REC Book 2110 Page 5316

RECORDER OF DEEDS
MONROE COUNTY
PENNSYLVANIA

INSTRUMENT NUMBER
200116821O
RECORDED ON
Dec 11, 2001
10:44:21 AM
BOOK&REC/2110
PAGE=5316

AFFORDABLE HOUSING $13.00
RECORDING FEES $43.00
STATE WRIT TAX $0.50
COUNTY ARCHIVES FEE $1.00
ROD ARCHIVES FEE $1.00
TOTAL $58.50

organized and existing under the laws of **The State of Ohio**
Lender's address is **3232 Newmark Drive, Miamisburg, OH 45342**

Lender is the mortgagee under this Security Instrument.
**(D) "Note"** means the promissory note signed by Borrower and dated **December 10, 2001**
The Note states that Borrower owes Lender

**TWO HUNDRED THIRTY ONE THOUSAND SIX HUNDRED & 00/100** Dollars
(U.S. $ **231,600.00** ) plus interest. Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than **June 1, 2032**
**(E) "Property"** means the property that is described below under the heading "Transfer of Rights in the Property."
**(F) "Loan"** means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the Note, and all sums due under this Security Instrument, plus interest.
**(G) "Riders"** means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☒ Other(s) [specify] |
| | | Construction/Permanent Rider |

**(H) "Applicable Law"** means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.
**(I) "Community Association Dues, Fees, and Assessments"** means all dues, fees, assessments and other charges that are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(J) "Electronic Funds Transfer"** means any transfer of funds, other than a transaction originated by check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
**(K) "Escrow Items"** means those items that are described in Section 3.
**(L) "Miscellaneous Proceeds"** means any compensation, settlement, award of damages, or proceeds paid by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(M) "Mortgage Insurance"** means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(N) "Periodic Payment"** means the regularly scheduled amount due for (i) principal and interest under the Note, plus (ii) any amounts under Section 3 of this Security Instrument.

Initials: TOCO

-6(PA) (0008)     Page 2 of 16     Form 3039  1/01

REC Book 2110 Page 5317

Case 5:15-bk-03521-JJT  Claim 5-1 Part 2  Filed 10/23/15  Desc Exhibit-Loan Documents  Page 11 of 79
Case 5:15-bk-03521-RNO  Doc 61  Filed 05/24/19  Entered 05/24/19 09:48:11  Desc Main Document  Page 18 of 79

(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.

(P) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender the following described property located in the     **County**     [Type of Recording Jurisdiction]
of    **Monroe**                                         [Name of Recording Jurisdiction]:

**LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF**

which currently has the address of
**LOT 13 KNOLL ACRES AT WOODDALE,**                              [Street]
**EAST STROUDSBURG**           [City], Pennsylvania    **18301**    [Zip Code]
("Property Address"):

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

Initials: _TC CO_

-6(PA) (0008)                      Page 3 of 16                             Form 3039  1/01

REC Book 2110 Page 5318

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

**1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2. Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in

Initials: TOCO

REC Book 2110 Page 5322

Case 5:15-bk-03521-JJT   Claim 5-1 Part 2   Filed 10/23/15   Desc Exhibit-Loan Documents   Page 13 of
Case 5:15-bk-03521-RNO   Doc 61   Filed 05/24/19   Entered 05/24/19 09:48:11   Desc Main Document   Page 20 of 79

full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3. Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the

REC Book 2110 Page 5323

Case 5:15-bk-03521-JJT  Claim 5-1 Part 2  Filed 10/23/15  Desc Exhibit Loan
Documents  Page 14 of 21
Case 5:15-bk-03521-RNO  Doc 61  Filed 05/24/19  Entered 05/24/19 09:48:11  Desc
Main Document  Page 21 of 79

Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

-6(PA) (0008)

Page 6 of 16

Initials: TO/D

Form 3039  1/01

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

REC Book 2110 Page 5325

Case 5:15-bk-03521-RNO   Doc Claim 5-1 Part 2   Filed 10/23/15   Desc Exhibit Loan
Documents   Page 16 of

**6. Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

**7. Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Initials: _TO/t_

REC Book 2110 Page 5326

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

**(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

Initials: _TO CP_

REC Book 2110 Page 5327

Case 5:15-bk-03521-JJT  Claim 5-1 Part 2  Filed 10/23/15  Desc Exhibit-Loan Documents  Page 13 of 25
Case 5:15-bk-03521-RNO  Doc 61  Filed 05/24/19  Entered 05/24/19 09:48:11  Desc Main Document  Page 25 of 79

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. **Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of

Initials: TC/r

REC Book 2110 Page 5328

Case 5:15-bk-03521-JJT Doc Claim 5-1 Part 2 Filed 10/23/15 Desc Exhibit Loan
Case 5:15-bk-03521-RNO Doc 61 Filed 05/24/19 Entered 05/24/19 09:48:11 Desc
Main Document Page 26 of 79

Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all

Initials: TO (initials)

REC Book 2110 Page 5330

expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

REC Book 2110 Page 5331

Case 3:15-bk-03521-RNO  Doc 61  Filed 05/24/19  Entered 05/24/19 09:48:11  Desc
Main Document  Page 29 of 79
Case 5:15-bk-03521-JJT  Claim 5-1 Part 2  Filed 10/23/15  Desc Exhibit Loan Documents  Page 29 of 79

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). Lender shall notify Borrower of, among other things: (a) the default; (b) the action required to cure the default; (c) when the default must be cured; and (d) that failure to cure the default as specified may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. Lender shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured as specified, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, attorneys' fees and costs of title evidence to the extent permitted by Applicable Law.**

**23. Release.** Upon payment of all sums secured by this Security Instrument, this Security Instrument and the estate conveyed shall terminate and become void. After such occurrence, Lender shall discharge and satisfy this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waivers.** Borrower, to the extent permitted by Applicable Law, waives and releases any error or defects in proceedings to enforce this Security Instrument, and hereby waives the benefit of any present or future laws providing for stay of execution, extension of time, exemption from attachment, levy and sale, and homestead exemption.

**25. Reinstatement Period.** Borrower's time to reinstate provided in Section 19 shall extend to one hour prior to the commencement of bidding at a sheriff's sale or other sale pursuant to this Security Instrument.

**26. Purchase Money Mortgage.** If any of the debt secured by this Security Instrument is lent to Borrower to acquire title to the Property, this Security Instrument shall be a purchase money mortgage.

**27. Interest Rate After Judgment.** Borrower agrees that the interest rate payable after a judgment is entered on the Note or in an action of mortgage foreclosure shall be the rate payable from time to time under the Note.

REC Book 2110 Page 5332

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

_____

_____ (Seal)
TERRANCE OBIE             -Borrower

_____ (Seal)
CALANDRA D OBIE        -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

_____ (Seal)
                  -Borrower

 -6(PA) (0008)            Page 15 of 16            Form 3039   1/01

REC Book 2110 Page 5333

Case 5:15-bk-03521-JJT   Claim 5-1 Part 2   Filed 10/23/15   Desc Exhibit Loan
Case 5:15-bk-03521-RNO   Doc 61   Filed 05/24/19   Entered 05/24/19 09:48:11   Desc
Main Document     Page 31 of 79
Documents     Page 74 of 97

**Certificate of Residence**

I, CHRISTINE M. BASILE , do hereby certify that
the correct address of the within-named Mortgagee is 3232 NEWMARK DRIVE, MIAMISBURG, OH 45342

Witness my hand this 10TH day of DECEMBER, 2001

*Christine M. Basile*

_____
Agent of Mortgagee

**COMMONWEALTH OF PENNSYLVANIA,** *Monroe* **County ss:**

On this, the *10th* day of *December 2001* , before me, the
undersigned officer, personally appeared *Terrance Obie and Calandra D. Obie*

known to me (or
satisfactorily proven) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged that he/she/they executed the same for the purposes herein contained.

IN WITNESS WHEREOF, I hereunto set my hand and official seal.
My Commission Expires:

_____

Notarial Seal
Angelo J. Cecila, Notary Public
Smithfield Twp., Monroe County
My Commission Expires June 19, 2003
Member, Pennsylvania Association of Notaries

Title of Officer

*VMP* -6(PA) (0008)

REC Book 2110 Page 5334

Page 16 of 16

Initials: _____

I Hereby CERTIFY that this instrument is recorded in the
Recorder's Office of Monroe County, Pennsylvania.

*Helen Diliidus*



## CONSTRUCTION/PERMANENT RIDER

**THIS CONSTRUCTION/PERMANENT RIDER** is made this 10th day of **December** , 2001 , and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the samedate given by the undersigned (the "Borrower") to secure Borrower's Note to __National City Mortgage Co dba *__ (the"Lender") of the same date and covering the property described in the Security Instrument and known as:

*Eastern Mortgage Services

LOT 13 KNOLL ACRES AT WOODDALE, EAST STROUDSBURG, Pennsylvania 18301

Monroe

(Property Address Including County)

**ADDITIONAL COVENANTS:** In addition to the covenants and agreements made in the Security Instrument and Note, Borrower and Lender further covenant and agree as follows:

1.      Borrower and Lender have executed a Construction/Permanent Loan Agreement of even date. The terms of said Construction/Permanent Loan Agreement unless otherwise stated are incorporated herein by reference.

2.      Borrower as owner, will construct a residence in accordance with the plans and specifications set forth in the Construction/Permanent Loan Agreement on the real property described in the Security Instrument.

3.      Construction of the residence set out above shall be completed on or before __5/29/2002__ , . If construction is not completed on that date, upon request of Lender, Borrower agrees to execute a modification agreement in form and substance satisfactory to Lender.

4.      Borrower agrees that during the time of the construction of the Improvements as set forth in the Construction/Permanent Loan Agreement, interest only will be charged on the amounts of the Loan actually disbursed. Upon completion of construction of the Improvements, but in any event no later than    5/29/2002 ,        , whether or not the construction of the Improvements is completed, Borrower agrees to make payments of principal and interest set forth in the Note.

5.      Borrower agrees that the proceeds of the loan evidenced by the Note will be disbursed pursuant to the Construction/Permanent Loan Agreement and Borrower further agrees to provide Lender with all documentation required under the Construction/Permanent Loan Agreement prior to requesting any disbursement.

6.      Borrower agrees that this Construction/Permanent Rider will be null and void upon completion of the construction of the Improvements and/or the beginning of the amortization of principal as set forth in the Note and in any event at the time the loan is sold in whole or in part to Federal National Mortgages Association, Government National Mortgage Association, Federal Home Loan Mortgage Corporation or any other purchaser which so requires.

NCM Form 1138
4/96

REC Book 2110 Page 5320

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Construction/Permanent Rider.

_____ (Seal)     _____ (Seal)
TERRANCE OBIE          Borrower     CALANDRA D OBIE          Borrower

_____ (Seal)     _____ (Seal)
                       Borrower                              Borrower

REC Book 2110 Page 5321

EXHIBIT A

**ALL THAT CERTAIN** piece or parcel of land situate, lying and being in the Township of Middle Smithfield, County of Monroe and Commonwealth of Pennsylvania, being Lot No. 13, as shown on a plan titled "KNOLL ACRES AT WOODDALE" as prepared by Frank J. Smith Jr., Inc. of Marshalls Creek, Pennsylvania and recorded in Monroe County, Pennsylvania in Plot Book No. 73, Page 184.

REC Book 2110 Page 5319

Case 5:15-bk-03521-RNO Doc 61 Filed 05/24/19 Entered 05/24/19 09:48:11 Desc
Case 5:15-bk-03521-JJT Doc Claim 5-1 Part 4 Filed 10/23/15 Desc Exhibit Loan
Main Document Page 35 of 79
Documents Page 28 of 77



# NOTE

| December 10 , 2001 | STROUDSBURG | PENNSYLVANIA |
|---|---|---|
| [Date] | [City] | [State] |

**LOT 13 KNOLL ACRES AT WOODDALE, EAST STROUDSBURG, Pennsylvania 18301**

[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $ **231,600.00** (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
**National City Mortgage Co dba Eastern Mortgage Services**

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of **6.500 %.**

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the **1st** day of each month beginning on **July 1 , 2002** . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on **June 1, 2032** , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at **National City Mortgage Co.**
**P.O. Box 856020, Louisville, KY 40285-6020** or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $ **1,463.87** .

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

**MULTISTATE FIXED RATE NOTE**-Single Family-**Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**

-5N (0005).01    **Form 3200 1/01**
VMP MORTGAGE FORMS - (800)521-7291
Page 1 of 3    Initials: _TO CB_



## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15       calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be      5.00       % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

### (C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

### (D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

### (E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

## 7. GIVING OF NOTICES

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

## 8. OBLIGATIONS OF PERSONS UNDER THIS NOTE

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

## 9. WAIVERS

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

## 10. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
TERRANCE OBIE                    -Borrower

_____ (Seal)
CALANDRA D OBIE                  -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

_____ (Seal)
                                 -Borrower

PAY TO THE ORDER OF

WITHOUT RECOURSE
NATIONAL CITY MORTGAGE CO.     [Sign Original Only]
CN EASTERN MORTGAGE SERVICES

CRAIG VANDERAU
DOCUMENT CONTROL SPECIALIST



# CONSTRUCTION/PERMANENT ADDENDUM
# TO FIXED RATE NOTE
### (with Capped/Float Down)

THIS CONSTRUCTION/PERMANENT ADDENDUM TO FIXED RATE NOTE (Addendum) is made this **10th** day of **December**, **2001** and is incorporated into and shall be deemed to amend and supplement the Fixed Rate Note (the "Note") of the same date given by the undersigned (the "Borrower") to evidence payment of Borrower's obligations under the Note to **National City Mortgage Co dba\*** (the "Lender") of the even date herewith. Any terms not defined in this Addendum shall have the same meaning as in the Note and/or Construction/Permanent Loan Agreement.  **\*Eastern Mortgage Services**

ADDITIONAL COVENANTS. In addition to the covenants, agreements and obligations set out in the Note, Borrower and Lender further covenant and agree as follows:

1.  Borrower and Lender have executed a Construction/Permanent Loan Agreement of even date herewith. The terms of said Construction/Permanent Loan Agreement are incorporated herein by reference.

2.  Borrower, as owner, will construct Improvements in accordance with the Plans and Specifications set forth in the Construction/Permanent Loan Agreement.

3.  The Note states that Borrower will make monthly payments of principal and interest on the dates set forth therein. Borrower hereby agrees that during the Construction Period of the Improvements as set forth in the Construction/Permanent Loan Agreement, interest only will be charged at the rate of __**8.500**__ % on the amounts actually disbursed and outstanding under the Note. Borrower agrees to make payments of interest only on the first (1st) day of every month beginning the (1st) day of the month following the first disbursement of the proceeds of the Note. Upon completion of the Construction Period, Borrower agrees that interest will be charged on the unpaid principal at a rate equal to the lower of the Current Rate or the Capped Rate. If Borrower fails to complete construction of the Improvements prior to the Completion Date Borrower agrees that interest will be charged on the unpaid principal at a rate equal to the higher of the Capped Rate or __**12.0**__ %.

    The Current Rate is that rate of interest quoted daily by Lender for a Lock-in Period of Forty-five (45) days or greater not to exceed Seventy-five (75) days.

    The Capped Rate is the mortgage rate as quoted by Lender on the day of Borrower's interest rate lock for the loan plus __**0.5**__ %. The rate of interest effective after the Construction Period will not be greater than the Capped Rate provided the Construction is completed before the Completion Date.

    At any time during the "Lock-in Period", which is the thirty (30) day period prior to the earlier of completion of the construction of the Improvements or **May 29th**, **2002**, Borrower may elect to choose or "lock-in" the Current Rate. If Borrower elects the Current Rate, the Current Rate shall be the rate of interest payable beginning after the Construction Period. If Borrower does not elect to choose or "lock-in" a Current Rate during the Lock-in Period, interest will be charged at the Capped Rate following the Construction Period.

4.  Borrower agrees that upon expiration of the Construction Period, Borrower will execute a modification agreement setting forth the interest rate, payment amount, and due date of payments for the period of the loan following the Construction Period. Should the Modification Agreement not be executed for any reason the interest rate on the unpaid principal being charged shall be increased to the higher of the Capped Rate as defined in the Capped Floating Rate or __**12.0**__ %.

5.  All other terms, conditions and obligations set forth in the Note relative to payments remain unchanged.

CONST01

Revised 01/01

6.  With the exception of the interest rate applicable to the loan following the Construction Period, Borrower agrees that this Construction/Permanent Loan Addendum to Fixed Rate Note will be null and void upon the completion of the construction and beginning of the amortization of principal as set forth in the Note, and in any event, at the time the loan is sold in whole or in part to Federal National Mortgage Association, Government National Mortgage Association, Federal Home Loan Mortgage Corporation or any other purchaser which so requires.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Construction/Permanent Addendum to Fixed Rate Note.

_____ (Seal)          _____ (Seal)
TERRANCE OBIE          Borrower                CALANDRA D OBIE          Borrower

_____ (Seal)          _____ (Seal)
                       Borrower                                       Borrower

CONST02

LOAN NUMBER 

## ASSIGNMENT OF MORTGAGE AND PROMISSORY NOTE

FOR VALUE RECEIVED, National City Mortgage Co., an Ohio Corporation, 3232 Newmark Drive, Miamisburg, Ohio 45342 (NCMC), hereby sells, transfers, sets over, and assigns to:

FEDERAL HOME LOAN MORTGAGE CORPORATION
8200 JONES BRANCH DR
MCLEAN VA 22102

NCMC's entire right, title, and interest in and to the following described mortgage (the Mortgage) and promissory note (the Promissory Note) which are dated July 16, 2002 , and are in the original principal amount of $ 231,600.00 . The Mortgage is described and identified by the following name(s) of the mortgagor(s), the date of recording, instrument number, and/or book number as recorded in Monroe County, Pennsylvania :

| MORTGAGOR(S) | INSTRUMENT NUMBER | BOOK & PAGE |
|---|---|---|
| TERRANCE OBIE | | |
| CALANDRA D OBIE | | |

IN TESTIMONY WHEREOF, said NATIONAL CITY MORTGAGE CO. has hereunto set its hands this 20 day of November , 2002 .

WITNESS:

_T. Robert_

_M. Wallenhorst_

NATIONAL CITY MORTGAGE CO.

By:

Name: TERRY BLOUNT
Title: DOCUMENT RELEASE ADMINISTRATOR

STATE OF OHIO )
) SS:
COUNTY OF WARREN )

On this 20 day of November , 2002 , before me, the undersigned, a Notary Public in and for said County and State, personally appeared TERRY BLOUNT , the DOCUMENT RELEASE ADMINISTRATOR on behalf of National City Mortgage Co., and duly authorized to do so acknowledged the execution of the foregoing Assignment of Mortgage and Promissory Note as its voluntary act and deed for the uses and purposes therein contained.

_Kristine N Brown_
KRISTINE N BROWN
Notary Public

My Commission Expires: 03/22/07    My County of Residence: WARREN

This Instrument Prepared by: NATIONAL CITY MORTGAGE CO.

Return to: National City Mortgage Co.



This document was prepared by
BARBARA MORGAN
3232 Newmark Dr.
Miamisburg, OH 45342
800-367-9305 Ext.52027

Return To:
PNC Mortgage
Special Loans Dept. (B6-YM14-01-8)
3232 Newmark Dr.
Miamisburg, OH 45342

_____ [Space Above This Line For Recording Data]_____

# HOME AFFORDABLE MODIFICATION AGREEMENT
## (Step Two of Two-Step Documentation Process)

Date Prepared: **01/15/10**
Borrower ("I"): **TERRANCE OBIE and CALANDRA D OBIE**
Lender or Servicer ("Lender"): PNC Mortgage, a division of PNC Bank, NA
Date of first lien mortgage, deed of trust, or security deed ("Mortgage") and Note ("Note"): **7/16/2002**
Loan Number ▮▮▮▮▮▮
Property Address: **808 KNOLL DR, EAST STROUDSBURG, PA 18301**

Tax Parcel Number: 9/91982

If my representations in Section 1 continue to be true in all material respects, then this Home Affordable Modification Agreement ("Agreement") will, as set forth in Section 3, amend and supplement (1) the Mortgage on the Property, and (2) the Note secured by the Mortgage. The Mortgage and Note together, as they may previously have been amended, are referred to as the "Loan Documents." Capitalized terms used in this Agreement and not defined have the meaning given to them in Loan Documents.

I understand that after I sign and return two copies of this Agreement to the Lender, the Lender will send me a signed copy of this Agreement. This Agreement will not take effect unless the preconditions set forth in Section 2 have been satisfied.

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT** – Single Family – Fannie Mae/Freddie Mac UNIFORM
**INSTRUMENT**                                                    Form 3157   3/09 (rev. 8/09) (page 1 of 6 pages)

Case 5:15-bk-03521-JJT   Claim 5-1 Part 4   Filed 10/23/15   Entered 05/24/19 09:48:11   Desc Exhibit Loan
Documents   Page 35 of 79

Case 5:15-bk-03521-RNO   Doc 61   Filed 05/24/19   Entered 05/24/19 09:48:11   Desc
Main Document   Page 42 of 79

1. **My Representations**. I certify, represent to Lender and agree:

   A. I am experiencing a financial hardship, and as a result, (i) I am in default under the Loan Documents, and (ii) I do not have sufficient income or access to sufficient liquid assets to make the monthly mortgage payments now or in the near future;
   B. I live in the Property as my principal residence, and the Property has not been condemned;
   C. There has been no change in the ownership of the Property since I signed the Loan Documents;
   D. I have provided documentation for all income that I receive (and I understand that I am not required to disclose child support or alimony unless I chose to rely on such income when requesting to qualify for the Home Affordable Modification program ("Program"));
   E. Under penalty of perjury, all documents and information I have provided to Lender in connection with this Agreement, including the documents and information regarding my eligibility for the Program, are true and correct;
   F. If Lender requires me to obtain credit counseling in connection with the Program, I will do so; and
   G. I have made or will make all payments required under a Trial Period Plan or Loan Workout Plan.

2. **Acknowledgements and Preconditions to Modification.** I understand and acknowledge that:

   A. If prior to the Modification Effective Date as set forth in Section 3 the Lender determines that any of my representations in Section 1 are no longer true and correct, the Loan Documents will not be modified and this Agreement will terminate. In that event, the Lender will have all of the rights and remedies provided by the Loan Documents; and

   B. I understand that the Loan Documents will not be modified unless and until (i) I receive from the Lender a copy of this Agreement signed by the Lender, and (ii) the Modification Effective Date (as defined in Section 3) has occurred. I further understand and agree that the Lender will not be obligated or bound to make any modification of the Loan Documents if I fail to meet any one of the requirements under this Agreement.

3. **The Modification.** If my representations in Section 1 continue to be true in all material respects and all preconditions to the modification set forth in Section 2 have been met, the Loan Documents will automatically become effective on **01/01/10** (the "Modification Effective Date") and all unpaid late charges that remain unpaid will be waived. I understand that if I have failed to make any payments as a precondition to this modification under a workout plan or trial period plan, this modification will not take effect. The first modified payment will be due on **01/01/10**.

   A. The new Maturity Date will be: **09/01/34.**

   B. The modified principal balance of my Note will include all amounts and arrearages that will be past due as of the Modification Effective Date (including unpaid and deferred interest, fees, escrow advances and other costs, but excluding unpaid late charges, collectively, "Unpaid Amounts") less any amounts paid to the Lender but not previously credited to my Loan. The new principal balance of my Note will be **$238,863.56** (the "New Principal Balance"). I understand that by agreeing to add the Unpaid Amounts to the outstanding principal balance, the added Unpaid Amounts accrue interest based on the interest rate in effect under this Agreement. I also understand that this means interest will now accrue on the unpaid Interest that is added to the outstanding principal balance, which would not happen without this Agreement.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3157    3/09 (rev. 8/09) (page 2 of 6 pages)

Case 5:15-bk-03521-JJT   Doc 61   Filed 05/24/19   Entered 05/24/19 09:48:11   Desc
Case 5:15-bk-03521-RNO   Claim 5-1 Part 4   Filed 10/23/15   Desc Exhibit Loan
Documents    Page 36 of 36
Main Document    Page 43 of 79

C. Interest at the rate of **2.000%** will begin to accrue on the New Principal Balance as of **12/01/09** and the first new monthly payment on the New Principal Balance will be due on **01/01/10**. My payment schedule for the modified Loan is as follows:

| Years | Interest Rate | Interest Rate Change Date | Monthly Principal and Interest Payment Amount | Estimated Monthly Escrow Payment Amount* | Total Monthly Payment* | Payment Begins On | Number of Monthly Payments |
|---|---|---|---|---|---|---|---|
| [1-5] | 2.000 | 12/01/2009 | $1,020.32 | $953.79, may adjust periodically | $1,974.11, may adjust periodically | 1/1/2010 | 60 |
| [6] | 3.000 | 12/01/2014 | $1,117.41 | May adjust periodically | May adjust periodically | 1/1/2015 | 12 |
| [7] | 4.000 | 12/01/2015 | $1,215.03 | May adjust periodically | May adjust periodically | 1/1/2016 | 12 |
| [8] | 5.000 | 12/01/2016 | $1,312.56 | May adjust periodically | May adjust periodically | 1/1/2017 | 213 |
| [9-[40]] | | | $ | May adjust periodically | May adjust periodically | | |

*The escrow payments may be adjusted periodically in accordance with applicable law and therefore my total monthly payment may change accordingly.

The above terms in this Section 3.C. shall supersede any provisions to the contrary in the Loan Documents, including but not limited to, provisions for an adjustable or step interest rate.

I understand that, if I have a pay option adjustable rate mortgage loan, upon modification, the minimum monthly payment option, the interest-only or any other payment options will no longer be offered and that the monthly payments described in the above payment schedule for my modified loan will be the minimum payment that will be due each month for the remaining term of the loan. My modified loan will not have a negative amortization feature that would allow me to pay less than the interest due resulting in any unpaid interest to be added to the outstanding principal balance.

D. I will be in default if I do not comply with the terms of the Loan Documents, as modified by this Agreement.

E. If a default rate of interest is permitted under the Loan Documents, then in the event of default under the Loan Documents, as amended, the interest that will be due will be the rate set forth in Section 3.C.

4. **Additional Agreements**. I agree to the following:

A. That all persons who signed the Loan Documents or their authorized representative(s) have

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT    Form 3157    3/09 (rev. 8/09) (page 3 of 6 pages)

Case 5:15-bk-03521-JJT Doc 61 Filed 05/24/19 Entered 05/24/19 09:48:11 Desc
Main Document    Page 44 of 79

signed this Agreement, unless (i) a borrower or co-borrower is deceased; (ii) the borrower and co-borrower are divorced and the property has been transferred to one spouse in the divorce decree, the spouse who no longer has an interest in the property need not sign this Agreement (although the non-signing spouse may continue to be held liable for the obligation under the Loan Documents); or (iii) the Lender has waived this requirement in writing.

B. That this Agreement shall supersede the terms of any modification, forbearance, Trial Period Plan or Workout Plan that I previously entered into with Lender.

C. To comply, except to the extent that they are modified by this Agreement, with all covenants, agreements, and requirements of Loan Documents including my agreement to make all payments of taxes, insurance premiums, assessments, Escrow Items, impounds, and all other payments, the amount of which may change periodically over the term of my Loan.

D. That this Agreement constitutes notice that the Lender's waiver as to payment of Escrow Items, if any, has been revoked, and I have been advised of the amount needed to fully fund my escrow account.

E. That the Loan Documents are composed of duly valid, binding agreements, enforceable in accordance with their terms and are hereby reaffirmed.

F. That all terms and provisions of the Loan Documents, except as expressly modified by this Agreement, remain in full force and effect; nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the obligations contained in the Loan Documents; and that except as otherwise specifically provided in, and as expressly modified by, this Agreement, the Lender and I will be bound by, and will comply with, all of the terms and conditions of the Loan Documents.

G. That, as of the Modification Effective Date, notwithstanding any other provision of the Loan Documents, I agree as follows: If all or any part of the Property or any interest in it is sold or transferred without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Mortgage. However, Lender shall not exercise this option if state or federal law, rules or regulations prohibit the exercise of such option as of the date of such sale or transfer. If Lender exercises this option, Lender shall give me notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which I must pay all sums secured by the Mortgage. If I fail to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Mortgage without further notice or demand on me.

H. That, as of the Modification Effective Date, I understand that the Lender will only allow the transfer and assumption of the Loan, including this Agreement, to a transferee of my property as permitted under the Garn St. Germain Act, 12 U.S.C. Section 1701j-3. A buyer or transferee of the Property will not be permitted, under any other circumstance, to assume the Loan. Except as noted herein, this Agreement may not be assigned to, or assumed by, a buyer or transferee of the Property.

I. That, as of the Modification Effective Date, if any provision in the Note or in any addendum or amendment to the Note allowed for the assessment of a penalty for full or partial prepayment of the Note, such provision is null and void.

J. That, I will cooperate fully with Lender in obtaining any title endorsement(s), or similar title insurance product(s), and/or subordination agreement(s) that are necessary or required by the Lender's procedures to ensure that the modified mortgage loan is in first lien position and/or is fully enforceable upon modification and that if, under any circumstance and not withstanding anything else to the contrary in this Agreement, the Lender does not receive such title endorsement(s), title insurance product(s) and/or subordination agreement(s), then

**MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**      **Form 3157**      **3/09 (rev. 8/09)** *(page 4 of 6 pages)*

Case 5:15-bk-03521-JJT   Doc 61   Filed 05/24/19   Entered 05/24/19 09:48:11   Desc
Main Document      Page 45 of 79

Case 5:15-bk-03521-RNO   Claim 5-1 Part 4   Filed 10/23/15   Desc Exhibit-Loan
Documents   Page 38 of 79

the terms of this Agreement will not become effective on the Modification Effective Date and the Agreement will be null and void.

K.  That I will execute such other documents as may be reasonably necessary to either (i) consummate the terms and conditions of this Agreement; or (ii) correct the terms and conditions of this Plan if an error is detected after execution of this Agreement. I understand that a corrected Agreement will be provided to me and this Agreement will be void and of no legal effect upon notice of such error. If I elect not to sign any such corrected Agreement, the terms of the original Loan Documents shall continue in full force and effect, such terms will not be modified by this Agreement, and I will not be eligible for a modification under the Home Affordable Modification program.

L.  Mortgage Electronic Registration Systems, Inc. ("MERS") is a separate corporation organized and existing under the laws of Delaware and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, (888) 679-MERS. In cases where the loan has been registered with MERS who has only legal title to the interests granted by the borrower in the mortgage and who is acting solely as nominee for Lender and Lender's successors and assigns, MERS has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling the mortgage loan.

M.  That Lender will collect and record personal information, including, but not limited to, my name, address, telephone number, social security number, credit score, income, payment history, government monitoring information, and information about account balances and activity. In addition, I understand and consent to the disclosure of my personal information and the terms of the Trial Period Plan and this Modification Agreement by Lender to (a) the U.S. Department of the Treasury, (b) Fannie Mae and Freddie Mac in connection with their responsibilities under the Home Affordability and Stability Plan; (c) any investor, insurer, guarantor or servicer that owns, insures, guarantees or services my first lien or subordinate lien (if applicable) mortgage loan(s); (d) companies that perform support services for the Home Affordable Modification Program and the Second Lien Modification Program; and (e) any HUD certified housing counselor.

N.  I agree that if any document related to the Loan Documents and/or this Agreement is lost, misplaced, misstated, inaccurately reflects the true and correct terms and conditions of the loan as modified, or is otherwise missing, I will comply with the Lender's request to execute, acknowledge, initial and deliver to the Lender any documentation the Lender deems necessary. If the original promissory note is replaced, the Lender hereby indemnifies me against any loss associated with a demand on the original note. All documents the Lender requests of me under this Section 4.N. shall be referred to as "Documents." I agree to deliver the Documents within ten (10) days after I receive the Lender's written request for such replacement.

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                     Form 3157      3/09 (rev. 8/09) (page 5 of 6 pages)

Case 5:15-bk-03521-JJT   Doc Claim 5-1 Part 4   Filed 10/23/15   Desc Exhibit Loan
Case 5:15-bk-03521-RNO   Doc 61   Filed 05/24/15   Entered 05/24/19 09:48:11   Desc
Documents       Page 39 of 79
Main Document       Page 46 of 79

In Witness Whereof, the Lender and I have executed this Agreement.

PNC Mortgage, a division of PNC Bank, NA
Lender

_____ (Seal)
Borrower- TERRANCE OBIE

1-29-2010
Date

By: _____
Mortgage Officer        2/1/10

_____ (Seal)
Borrower- CALANDRA D OBIE

01/29/2010
Date

Date

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
LARRY N. DETRICK, JR., Notary Public
Stroud Twp., Monroe County
My Commission Expires August 11, 2012

_____ [Space Below This Line For Acknowledgement] _____

MULTISTATE HOME AFFORDABLE MODIFICATION AGREEMENT – Single Family – Fannie Mae/Freddie Mac UNIFORM
INSTRUMENT                                                Form 3157    3/09  (rev. 8/09) (page 6 of 6 pages)

Case 5:15-bk-03521-JJT  Doc 61  Filed 05/24/19  Entered 05/24/19 09:48:11  Desc
Main Document    Page 47 of 79

Case 5:15-bk-03521-RNO  Claim 5-1 Part 4  Filed 10/23/15  Desc Exhibit-Loan
Documents    Page 40 of 57

SANTA ANA, CALIFORNIA 92799-7670
ATTN: SPECIAL DEFAULT SERVICES DIVISION

Tax Parcel No.: 9/15/1/16-1



Freddie Mac Loan
Lo

# LOAN MODIFICATION AGREEMENT

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.

This Loan Modification Agreement ("Modification") is effective  MAY 1, 2006              , between
**TERRANCE OBIE AND CALANDRA D. OBIE**

("Borrower"), whose address is **808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**                                          ,
and
**NATIONAL CITY MORTGAGE CO.**                                                    ,
("Lender"), whose address is  **3232 NEWMARK DRIVE**
**MIAMISBURG, OHIO 45342**                                        and amends
and supplements (1) the Note (the "Note") made by the Borrower dated  **DECEMBER 1, 2001**        ,
in the original principal sum of U.S. $          **231,600.00**         , and (2) the Mortgage, Deed of Trust or
Deed to Secure Debt (the "Security Instrument"), recorded on  **DECEMBER 11, 2001**            , in
 Book 2110, Page 5316 - 5333 Instrument No. ▮▮▮▮**MONROE**                COUNTY,
**PENNSYLVANIA**                . The Security Instrument, which was entered into as security for the
performance of the Note, encumbers the real and personal property described in the Security Instrument (and
defined in the Security Instrument as the "Property"), which is located at
**808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**                                               .

**FREDDIE MAC LOAN MODIFICATION AGREEMENT**
FAND# FRMOD Rev. 03-23-04                    Page 1 of 5      Initials _TO_ Initials _CO_ Initials _____ Initials _____

Freddie Mac Loan N███████
Loan ███████

That real property is located in the County of    **MONROE**
**PENNSYLVANIA**           , and is described as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

Tax Parcel No. **9/15/1/16-1**

The Borrower has requested that the Lender modify the terms of the Note and the Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification. In consideration of the agreements made in this Modification, and other good and valuable consideration which the parties agree they have received, the Borrower and the Lender agree to modify the terms of the Note and Security Agreement as follows. The Borrower and the Lender agree that the provisions of this Modification supercede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1.    The Borrower represents that the Borrower **X** ] is [  ] is not the occupant of the Property.

2.    The Borrower acknowledges that interest has accrued but has not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of $    **22,452.27**   , have been added to the indebtedness under the terms of the Note and Security Instrument. As of **MAY 1, 2006**   , the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $    **246,247.31**   .

3.    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the Unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of  **6.500**   %, beginning **MAY 1, 2006**   . The Borrower promises to make monthly payments of principal and interest of U.S. $    **1,631.37**   , beginning on the first day of **JUNE, 2006**   , and continuing thereafter on the same day of each succeeding month. If on **AUGUST 01, 2032**   (the "Modified Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Modified Maturity Date. The Borrower will make such payments at

**3232 NEWMARK DRIVE**
**MIAMISBURG, OHIO 45342**
or at such other place as the Lender may require.

**FREDDIE MAC LOAN MODIFICATION AGREEMENT**
FAND# FRMOD-2 Rev. 05-18-03              Page 2 of 5      Initials ___ Initials ___ Initials ___ Initials ___

Case 5:15-bk-03521-JJT  Doc  Claim 5-1 Part 2  Filed 10/23/15  Desc Exhibit Loan
Case 5:15-bk-03521-RNO  Doc 61  Filed 05/24/19  Entered 05/24/19 09:48:11  Desc
Documents   Page 42 of 79
Main Document   Page 49 of 79

ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING IN THE TOWNSHIP OF MIDDLE SMITHFIELD, COUNTY OF MONROE AND COMMONWEALTH OF PENNSYLVANIA, BEING LOT NO. 13, AS SHOWN ON A PLAN TITLED "KNOLL ACRES AT WOODDALE" AS PREPARED BY FRANK J. SMITH JR., INC. OF MARSHALLS CREEK, PENNSYLVANIA AND RECORDED IN MONROE COUNTY, PENNSYLVANIA IN PLOT BOOK NO. 73, PAGE 184.

TOGETHER WITH ALL RIGHTS AND PRIVILEGES AND UNDER AND SUBJECT TO THE COVENANTS, EXCEPTIONS, CONDITIONS, RESERVATIONS AND RESTRICTIONS AS OF RECORD.

TAX ID #9/15/1/16-1 (PART OF)

4. If at any time the Borrower is in default, the Lender may, by providing a written notice to the Borrower, notify the Borrower that the Borrower is in default and that the interest which will be charged on the Unpaid Principal Balance may be increased to a yearly rate of  6.500  % beginning on an effective date stated in the notice. That date will be at least 30 days after the date on which the notice is delivered or mailed to the Borrower. If the Borrower defaults, the Lender may, at its election, require the Borrower to pay immediately the Unpaid Principal Balance that remains unpaid at that time, all interest that has accrued but not been paid, and any other sums that are evidenced and secured by the Note and Security Instrument. If the Lender does not require that such payment be made immediately, the Borrower shall pay an increased monthly payment that will be based upon the interest rate stated in this Paragraph 4 instead of the interest rate stated in Paragraph 3. The Borrower acknowledges that the increased rate of interest will only be charged if the Borrower does not meet its obligations under the Note and Security Instrument, as modified by this Modification.

5. Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements and requirements of the Note and the Security Instrument, including without limitation, the Borrower's agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that the Borrower is obligated to make under the Security Instrument.

6. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

7. If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.

   [X] 1-4 Family Rider - Assignment of Rents      [ ] Modification Bankruptcy Rider
   [X] Modification Due on Transfer Rider

8. Notwithstanding anything to the contrary contained in the Loan Modification Agreement, the parties hereto acknowledge that if the Borrower(s) has received a discharge order on a Chapter 7 Bankruptcy case, the Borrower(s) may no longer be personally liable for the subject Loan. In addition, if the Borrower(s) obtains a Chapter 7 discharge as a result of a bankruptcy pending at the time the Agreement is executed, Lender also recognizes that the Borrower(s) may not be personally liable for the payment of the Loan. However, the parties acknowledge that the Lender retains certain rights, including but not limited to the right to foreclose its lien under appropriate circumstances. The parties agree that the consideration for this agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligations there under. The parties further acknowledge and agree that nothing herein shall be construed to be an attempt to collect against the Borrower(s) personally or an attempt to reaffirm or revive Borrower's personal liability, which has been or may be discharged by a bankruptcy.

_____  5/11/06 (Date)
TERRANCE OBIE                                     -Borrower


*Calandra D. Obie*  _____  5·11·06 (Date)
CALANDRA D. OBIE                          -Borrower


_____  _____ (Date)
                                                   -Borrower


_____  _____ (Date)
                                                   -Borrower


NATIONAL CITY MORTGAGE CO.

_____
Name:   MICHAEL GREASER                              -Lender
Its:    MORTGAGE OFFICER

Freddie Mac Loan N█████
Loan No. █████

## BORROWER ACKNOWLEDGMENT

State of Pennsylvania
County of *Monroe*

On *May 11, 2006*      before me,
personally appeared
**TERRANCE OBIE AND CALANDRA D. OBIE**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____        (Seal)

## LENDER ACKNOWLEDGMENT

NOTARIAL SEAL
LARRY N. DETRICK JR., Notary Public
Stroud Twp., Monroe County
My Commission Expires August 11, 2008

State of **OHIO**
County of **MONTGOMERY**

On *June 5, 2006*      before me, *Kristina K Smith*
personally appeared **MICHAEL GREASER**      , the **MORTGAGE OFFICER**
of *National City Mortgage Co*

a _____ , on behalf of said entity,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____        (Seal)
**MICHAEL GREASER, MORTGAGE OFFICER**

**KRISTINA K. SMITH, NOTARY PUBLIC
IN AND FOR THE STATE OF OHIO
MY COMMISSION EXPIRES SEPT. 29, 2008**

FREDDIE MAC LOAN MODIFICATION AGREEMENT
FAND# PAFRMOD-5 Rev. 05-16-03        Page 5 of 5

Freddie Mae Loan N
Loan N

# MODIFICATION DUE ON TRANSFER RIDER

THIS MODIFICATION DUE ON TRANSFER RIDER, effective **MAY 1, 2006**                    , is incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the same date made by
**TERRANCE OBIE AND CALANDRA D. OBIE**

(the "Borrower") and   **NATIONAL CITY MORTGAGE CO.**

(the "Lender") covering the Property described in the Loan Modification Agreement and located at
**808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and the Lender covenant and agree as follows:

A.        Notwithstanding any other covenant, agreement or provision of the Note and Security Agreement, as defined in the Loan Modification Agreement, the Borrower agrees as follows:

> **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by the Security Instrument. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of the Loan Modification Agreement.

> If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by the Security Instrument without further notice or demand on Borrower.

B.        Except as otherwise specifically provided in this Modification Due on Transfer Rider, the Loan Modification Agreement, the Note and Security Instrument will remain unchanged and in full effect.

FAND# MODTRANSRIDER Rev. 06-12-02                    Page 1

NOTARIAL SEAL
LARRY N. DETRICK JR., Notary Public
Stroud Twp., Monroe County
My Commission Expires August 11, 2008

_____ (Seal)
**TERRANCE OBIE**                       -Borrower

_____ (Seal)
**CALANDRA D. OBIE**              -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Seal)
                                      -Borrower

_____ (Corporate Seal)
Name:    **MICHAEL GREASER**           -Lender
Its:      **MORTGAGE OFFICER**

FAND# MODTRANSRIDER-2 Rev. 06-12-02           Page 2

Case 5:15-bk-03521-JJT   Claim 5-1 Part 2   Filed 10/23/15   Desc Exhibit Loan
Documents    Page 48 of 72
Case 5:15-bk-03521-RNO   Doc 61   Filed 05/24/19   Entered 05/24/19 09:48:11   Desc
Main Document    Page 55 of 79

# 1-4 FAMILY MODIFICATION AGREEMENT RIDER
## ASSIGNMENT OF RENTS

THIS 1-4 FAMILY MODIFICATION AGREEMENT RIDER ASSIGNMENT OF RENTS ("1-4 Family Rider") effective **MAY 1, 2006**             , is incorporated into that certain Loan Modification Agreement (the "Modification") of the same date made by
**TERRANCE OBIE AND CALANDRA D. OBIE**


(the "Borrower") and is incorporated into and amends and supplements the Security Instrument executed by the Borrower to secure the Note. The Security Instrument covers the Property described in the Security Instrument and located at
**808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**

   **1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and the Lender covenant and agree as follows:
   **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
   **B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification unless the lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

FAND# 1-4FAMMODRIDER Rev. 12-29-03                Page 1                       $TO\ CO$

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not permit any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5 of the Security Instrument.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 of the Security Instrument is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 of the Security Instrument concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 of the Security Instrument shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, all in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument, and (ii) Lender has given notice to tenant(s) that the Rents are to be paid to Lender or Lender's agent. This Assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including but not limited to attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sum secured by this Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account only for those rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing of inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Property pursuant to Uniform Covenant 7 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This Assignment of Rents of the Property shall terminate when all sums secured by this Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

FAND# 1-4FAMMODRIDER-2 Rev. 06-13-02          Page 2

*TO  CO*

**J. PRIOR ASSIGNMENT OF RENTS.** This 1-4 Family Rider supercedes the provisions of any previous 1-4 Family Rider Assignment of Rents (a "Previous Assignment") executed by Borrower pertaining to the Property. If a Previous Assignment has been executed by the Borrower, then the assignment and lien granted in the Assignment of Rents contained in paragraph H of this 1-4 Family Rider shall relate back in time to the date and priority of any such Previous Assignment.

**K. CAPITALIZED TERMS.** Capitalized terms used in this 1-4 Family Rider shall have the meanings ascribed to them in the Modification except as otherwise specifically set forth in this 1-4 Family Rider.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
**TERRANCE OBIE**                                              -Borrower

_____ (Seal)
**CALANDRA D. OBIE**                                           -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                      -Borrower


_____ (Seal)
                                                      -Borrower


_____ (Corporate Seal)
Name:  MICHAEL GREASER                                   -Lender
Its:   MORTGAGE OFFICER


FAND# 1-4FAMMODRIDER-4 Rev. 06-14-02        Page 4

OBIE
808 KNOLL DRIVE
EAST STROUDSBURG, PENNSYLVANIA 18301
NATIONAL CITY MORTGAGE CO.

# NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

_____    5/11/06
Borrower                                                                        Date
TERRANCE OBIE

_____    5.11.06
Borrower                                                                        Date
CALANDRA D. OBIE

_____    _____
Borrower                                                                        Date

_____    _____
Borrower                                                                        Date

_____    _____
Borrower                                                                        Date

_____    _____
Borrower                                                                        Date

FAND# FAND033 Rev. 06-11-02

OBIE
808 KNOLL DRIVE
EAST STROUDSBURG, PENNSYLVANIA 18301
NATIONAL CITY MORTGAGE CO.

# ERRORS AND OMISSIONS
# COMPLIANCE AGREEMENT

In consideration of
**NATIONAL CITY MORTGAGE CO.**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

_____     5/11/06
TERRANCE OBIE                        Date

_____     5.11.06
CALANDRA D. OBIE                     Date

_____     _____
                                     Date

_____     _____
                                     Date

_____     _____
                                     Date

_____     _____
                                     Date

FAND# FAND034 Rev. 06-18-02



MODIFICATION AGREEMENT

First American Title
Lenders Advantage
1100 Superior Ave                    **DIVISION**
Cleveland, Ohio 44114
ATTN: NATIONAL RECORDINGS

**Tax Parcel No.: 9/15/1/16-1**



Freddie

# LOAN MODIFICATION AGREEMENT

THIS MODIFICATION IS TO BE EXECUTED IN DUPLICATE ORIGINALS.
ONE ORIGINAL IS TO BE AFFIXED TO THE ORIGINAL NOTE AND
ONE ORIGINAL IS TO BE RECORDED IN THE LAND RECORDS WHERE
THE SECURITY INSTRUMENT IS RECORDED.

This Loan Modification Agreement ("Modification") is effective **MAY 1, 2006**                    , between
**TERRANCE OBIE AND CALANDRA D. OBIE**

("Borrower"), whose address is **808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**                                                ,
and
**NATIONAL CITY MORTGAGE CO.**                                                          ,
("Lender"), whose address is **3232 NEWMARK DRIVE**
**MIAMISBURG, OHIO 45342**                                    and amends
and supplements (1) the Note (the "Note") made by the Borrower dated **DECEMBER 1, 2001**            ,
in the original principal sum of U.S. $        **231,600.00**       , and (2) the Mortgage, Deed of Trust or
Deed to Secure Debt (the "Security Instrument"), recorded on **DECEMBER 11, 2001**           , in
 Book 2110, Page 5316 - 5333 Instrument No▮▮▮▮▮  **MONROE**                **COUNTY,**
**PENNSYLVANIA**               . The Security Instrument, which was entered into as security for the
performance of the Note, encumbers the real and personal property described in the Security Instrument (and
defined in the Security Instrument as the "Property"), which is located at
**808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**                                                .

**FREDDIE MAC LOAN MODIFICATION AGREEMENT**
FAND# FRMOD Rev. 03-23-04                    Page 1 of 5       Initials *TO* Initials *CO* Initials _____   Initials _____

REG Book 2294 Page 6062

Freddie Mac ▮▮▮▮▮▮▮▮

That real property is located in the County of       **MONROE**
**PENNSYLVANIA**                                    , and is described as follows:
**SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF;**

Tax Parcel No. 9/15/1/16-1

The Borrower has requested that the Lender modify the terms of the Note and the Security Instrument. The Lender has agreed to do so pursuant to the terms and conditions stated in this Modification. In consideration of the agreements made in this Modification, and other good and valuable consideration which the parties agree they have received, the Borrower and the Lender agree to modify the terms of the Note and Security Agreement as follows. The Borrower and the Lender agree that the provisions of this Modification supercede and replace any inconsistent provisions set forth in the Note and Security Instrument.

1.    The Borrower represents that the Borrower ⟨X⟩ is [ ] is not the occupant of the Property.
2.    The Borrower acknowledges that interest has accrued but has not been paid and the Lender has incurred, paid or otherwise advanced taxes, insurance premiums and other expenses necessary to protect or enforce its interest in the Note and the Security Instrument, and that such interest, costs and expenses, in the total amount of $    **22,452.27**        , have been added to the indebtedness under the terms of the Note and Security Instrument. As of  **MAY 1, 2006**          , the amount, including such amounts which have been added to the indebtedness (if any), payable under the Note and Security Instrument (the "Unpaid Principal Balance") is U.S. $    **246,247.31**
3.    The Borrower promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender, until the Unpaid Principal Balance has been paid. Interest will be charged on the Unpaid Principal Balance at the yearly rate of   **6.500**        %, beginning **MAY 1, 2006**          . The Borrower promises to make monthly payments of principal and interest of U.S. $    **1,631.37**          , beginning on the first day of **JUNE, 2006**             , and continuing thereafter on the same day of each succeeding month. If on **AUGUST 01, 2032**         (the "Modified Maturity Date"), the Borrower still owes amounts under the Note and the Security Instrument, as amended by this Modification, the Borrower will pay these amounts in full on the Modified Maturity Date. The Borrower will make such payments at

      **3232 NEWMARK DRIVE**
      **MIAMISBURG, OHIO 45342**
      or at such other place as the Lender may require.

FREDDIE MAC LOAN MODIFICATION AGREEMENT
FAND# FRMOD-2 Rev. 05-18-03              Page 2 of 5       Initials _TO_ Initials _CO_ Initials ____  Initials _____

EXHIBIT "A"

ALL THAT CERTAIN PIECE OR PARCEL OF LAND SITUATE, LYING AND BEING
IN THE TOWNSHIP OF MIDDLE SMITHFIELD, COUNTY OF MONROE AND
COMMONWEALTH OF PENNSYLVANIA, BEING LOT NO. 13, AS SHOWN ON A
PLAN TITLED "KNOLL ACRES AT WOODDALE" AS PREPARED BY FRANK J.
SMITH JR., INC. OF MARSHALLS CREEK, PENNSYLVANIA AND RECORDED IN
MONROE COUNTY, PENNSYLVANIA IN PLOT BOOK NO. 73, PAGE 184.

TOGETHER WITH ALL RIGHTS AND PRIVILEGES AND UNDER AND SUBJECT
TO THE COVENANTS, EXCEPTIONS, CONDITIONS, RESERVATIONS AND
RESTRICTIONS AS OF RECORD.

TAX ID #9/15/1/16-1 (PART OF)

█████████  OBIE

                        PA
FIRST AMERICAN LENDERS ADVANTAGE
MODIFICATION AGREEMENT
████████████████

Freddie Mac Loan
Lo

# MODIFICATION DUE ON TRANSFER RIDER

THIS MODIFICATION DUE ON TRANSFER RIDER, effective   MAY 1, 2006               , is
incorporated into and shall be deemed to amend and supplement the Loan Modification Agreement of the
same date made by
**TERRANCE OBIE AND CALANDRA D. OBIE**


(the "Borrower") and   **NATIONAL CITY MORTGAGE CO.**

(the "Lender") covering the Property described in the Loan Modification Agreement and located at
**808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**

In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and the
Lender covenant and agree as follows:

A.      Notwithstanding any other covenant, agreement or provision of the Note and Security Agreement, as
defined in the Loan Modification Agreement, the Borrower agrees as follows:

   **Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property
   or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred
   and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its
   option, require immediate payment in full of all sums secured by the Security Instrument. However,
   this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of
   the Loan Modification Agreement.

   If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall
   provide a period of not less than 30 days from the date the notice is delivered or mailed within which
   Borrower must pay all sums secured by the Security Instrument. If Borrower fails to pay these sums
   prior to the expiration of this period, Lender may invoke any remedies permitted by the Security
   Instrument without further notice or demand on Borrower.

B.      Except as otherwise specifically provided in this Modification Due on Transfer Rider, the Loan
Modification Agreement, the Note and Security Instrument will remain unchanged and in full effect.

FAND# MODTRANSRIDER Rev. 06-12-02              Page 1

**C. SUBORDINATE LIENS.** Except as permitted by federal law, Borrower shall not permit any lien inferior to the Security Instrument to be perfected against the Property without Lender's prior written permission.

**D. RENT LOSS INSURANCE.** Borrower shall maintain insurance against rent loss in addition to the other hazards for which insurance is required by Uniform Covenant 5 of the Security Instrument.

**E. "BORROWER'S RIGHT TO REINSTATE" DELETED.** Uniform Covenant 18 of the Security Instrument is deleted.

**F. BORROWER'S OCCUPANCY.** Unless Lender and Borrower otherwise agree in writing, the first sentence in Uniform Covenant 6 of the Security Instrument concerning Borrower's occupancy of the Property is deleted. All remaining covenants and agreements set forth in Uniform Covenant 6 of the Security Instrument shall remain in effect.

**G. ASSIGNMENT OF LEASES.** Upon Lender's request, Borrower shall assign to lender all leases of the Property and all security deposits made in connection with leases of the Property. Upon the assignment, Lender shall have the right to modify, extend or terminate the existing leases and to execute new leases, all in Lender's sole discretion. As used in this paragraph G, the word "lease" shall mean "sublease" if the Security Instrument is on a leasehold.

**H. ASSIGNMENT OF RENTS; APPOINTMENT OF RECEIVER; LENDER IN POSSESSION.** Borrower absolutely and unconditionally assigns and transfers to Lender all the rents revenues ("Rents") of the Property, regardless of to whom the Rents of the Property are payable. Borrower authorizes Lender or Lender's agents to collect the Rents, and agrees that each tenant of the Property shall pay the Rents to Lender or Lender's agents. However, Borrower shall receive the Rents until (i) Lender has given Borrower notice of default pursuant to paragraph 21 of the Security Instrument, and (ii) Lender has given notice to tenant(s) that the Rents are to be paid to Lender or Lender's agent. This Assignment of Rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of default to Borrower: (i) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (ii) Lender shall be entitled to collect and receive all Rents of the Property; (iii) Borrower agrees that each tenant of the Property shall pay all Rents due and unpaid to Lender or Lender's agents upon Lender's written demand to the tenant; (iv) unless applicable law provides otherwise, all rents collected by Lender or Lender's agents shall be applied first to the costs of taking control of and managing the Property and collecting the Rents, including but not limited to attorneys' fees, receiver's fees, premiums on receiver's bonds, repair and maintenance costs, insurance premiums, taxes, assessments and other charges on the Property, and then to the sum secured by this Security Instrument; (v) Lender, Lender's agents or any judicially appointed receiver shall be liable to account only for those rents actually received; and (vi) Lender shall be entitled to have a receiver appointed to take possession of and manage the Property and collect the Rents and profits derived from the Property without any showing of inadequacy of the Property as security.

If the Rents of the Property are not sufficient to cover the costs of taking control and managing the Property and of collecting the Rents, any funds expended by Lender for such purposes shall become indebtedness of Borrower to Lender secured by the Property pursuant to Uniform Covenant 7 of the Security Instrument.

Borrower represents and warrants that Borrower has not executed any prior assignment of Rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph.

Lender, or Lender's agents or judicially appointed receiver, shall not be required to enter upon, take control of or maintain the Property before or after giving notice of default to Borrower. However, Lender, or Lender's agents or judicially appointed receiver, may do so at any time when a default occurs. Any application of Rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This Assignment of Rents of the Property shall terminate when all sums secured by this Security Instrument are paid in full.

**I. CROSS-DEFAULT PROVISION.** Borrower's default or breach under any note or agreement in which Lender has an interest shall be a breach under the Security Instrument and Lender may invoke any of the remedies permitted by the Security Instrument.

TO CO

**J. PRIOR ASSIGNMENT OF RENTS.** This 1-4 Family Rider supercedes the provisions of any previous 1-4 Family Rider Assignment of Rents (a "Previous Assignment") executed by Borrower pertaining to the Property. If a Previous Assignment has been executed by the Borrower, then the assignment and lien granted in the Assignment of Rents contained in paragraph H of this 1-4 Family Rider shall relate back in time to the date and priority of any such Previous Assignment.

**K. CAPITALIZED TERMS.** Capitalized terms used in this 1-4 Family Rider shall have the meanings ascribed to them in the Modification except as otherwise specifically set forth in this 1-4 Family Rider.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this 1-4 Family Rider.

_____ (Seal)
**TERRANCE OBIE**                                              -Borrower

_____ (Seal)
**CALANDRA D. OBIE**                                          -Borrower

_____ (Seal)
                                                              -Borrower

_____ (Seal)
                                                              -Borrower

NOTARIAL SEAL
LARRY N. DETRICK, JR., Notary Public
Stroud Twp., Monroe County
My Commission Expires August 11, 2008

FAND# 1-4FAMMODRIDER-3 Rev. 06-13-02          Page 3

_____ (Seal)
                                                 -Borrower


_____ (Seal)
                                                 -Borrower


_____ (Corporate Seal)
Name:   **MICHAEL GREASER**                      -Lender
Its:    **MORTGAGE OFFICER**


*FAND# 1-4FAMMODRIDER-4 Rev. 06-14-02*          Page 4

# 1-4 FAMILY MODIFICATION AGREEMENT RIDER
## ASSIGNMENT OF RENTS

THIS 1-4 FAMILY MODIFICATION AGREEMENT RIDER ASSIGNMENT OF RENTS ("1-4 Family Rider") effective **MAY 1, 2006** , is incorporated into that certain Loan Modification Agreement (the "Modification") of the same date made by
**TERRANCE OBIE AND CALANDRA D. OBIE**


(the "Borrower") and is incorporated into and amends and supplements the Security Instrument executed by the Borrower to secure the Note. The Security Instrument covers the Property described in the Security Instrument and located at
**808 KNOLL DRIVE**
**EAST STROUDSBURG, PENNSYLVANIA 18301**

   **1-4 FAMILY COVENANTS.** In addition to the covenants and agreements made in the Loan Modification Agreement, the Borrower and the Lender covenant and agree as follows:
   **A. ADDITIONAL PROPERTY SUBJECT TO THE SECURITY INSTRUMENT.** In addition to the Property described in the Security Instrument, the following items are added to the Property description, and shall also constitute the Property covered by the Security Instrument: building materials, appliances and goods of every nature whatsoever now or hereafter located in, on, or used, or intended to be used in connection with the Property, including, but not limited to, those for the purposes of supplying or distributing heating, cooling, electricity, gas, water, air and light, fire prevention and extinguishing apparatus, security and access control apparatus, plumbing, bath tubs, water heaters, water closets, sinks, ranges, stoves, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains and curtain rods, attached mirrors, cabinets, paneling and attached floor coverings now or hereafter attached to the Property, all of which, including replacements and additions thereto, shall be deemed to be and remain a part of the Property covered by the Security Instrument. All of the foregoing together with the Property described in the Security Instrument (or the leasehold estate if the Security Instrument is on a leasehold) are referred to in this 1-4 Family Rider and the Security Instrument as the "Property."
   **B. USE OF PROPERTY; COMPLIANCE WITH LAW.** Borrower shall not seek, agree to or make a change in the use of the Property or its zoning classification unless the lender has agreed in writing to the change. Borrower shall comply with all laws, ordinances, regulations and requirements of any governmental body applicable to the Property.

FAND# 1-4FAMMODRIDER Rev. 12-29-03                Page 1

NOTARIAL SEAL
LARRY N. DETRICK, JR., Notary Public
Stroud Twp., Monroe County
My Commission Expires August 11, 2008

_____ (Seal)
TERRANCE OBIE                          -Borrower

_____ (Seal)
CALANDRA D. OBIE                        -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Seal)
                                       -Borrower

_____ (Corporate Seal)
Name:   MICHAEL GREASER                 -Lender
Its:    MORTGAGE OFFICER

FAND# MODTRANSRIDER-2 Rev. 06-12-02            Page 2

**OBIE**
808 KNOLL DRIVE
EAST STROUDSBURG, PENNSYLVANIA 18301
NATIONAL CITY MORTGAGE CO.

# EXHIBIT

## NOTICE OF NO ORAL AGREEMENTS

**THIS WRITTEN LOAN AGREEMENT REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED BY EVIDENCE OF PRIOR, CONTEMPORANEOUS OR SUBSEQUENT ORAL AGREEMENTS OF THE PARTIES.**

**THERE ARE NO UNWRITTEN ORAL AGREEMENTS BETWEEN THE PARTIES.**

**Receipt of Notice.** The undersigned hereby admit to having each received and read a copy of this Notice on or before execution of the Loan Agreement. "Loan Agreement" means one or more promises, promissory notes, agreements, undertakings, security agreements, deeds of trust or other documents, or commitments, or any combination of those actions or documents, pursuant to which a financial institution loans or delays repayment of or agrees to loan or delay repayment of money, goods or any other thing of value or to otherwise extend credit or make a financial accommodation.

| | |
|---|---|
| Borrower | 5/11/06 |
| **TERRANCE OBIE** | Date |

| | |
|---|---|
| Borrower *Calandra D. Vlee* | 5·11·06 |
| **CALANDRA D. OBIE** | Date |

| | |
|---|---|
| Borrower | Date |

| | |
|---|---|
| Borrower | Date |

| | |
|---|---|
| Borrower | Date |

| | |
|---|---|
| Borrower | Date |

FAND# FAND033 Rev. 06-11-02

OBIE
808 KNOLL DRIVE
EAST STROUDSBURG, PENNSYLVANIA 18301
NATIONAL CITY MORTGAGE CO.

## ERRORS AND OMISSIONS
## COMPLIANCE AGREEMENT

**EXHIBIT**

In consideration of
**NATIONAL CITY MORTGAGE CO.**

(the "Lender") agreeing to modify the referenced loan (the "Loan") to the Borrower, the Borrower agrees that if requested by the Lender, the Borrower will correct, or cooperate in the correction of, any clerical errors made in any document or agreement entered into in connection with the modification of the Loan, if deemed necessary or desirable in the reasonable discretion of the Lender, to enable Lender to sell, convey, seek guaranty or market the Loan to any entity, including without limitation, the Federal National Mortgage Association, the Federal Home Loan Mortgage Corporation, the Government National Mortgage Association, the Federal Housing Authority, the Department of Veterans Affairs or any municipal bond authority.

The Borrower agrees to comply with all such requests made by the Lender within 30 days of receipt of written request from the Lender. Borrower agrees to assume all costs that may be incurred by the Lender, including without limitation, actual expenses, legal fees and marketing losses, as a result of the Borrower's failure to comply with all such requests within such 30 day time period.

The Borrower makes this agreement in order to assure that the documents and agreements executed in connection with the modification of the Loan will conform to and be acceptable in the marketplace in the event the Loan is transferred, conveyed, guaranteed or marketed by the Lender.

| | |
|---|---|
| TERRANCE OBIE | 5/11/06 Date |
| CALANDRA D. OBIE | 5·11·06 Date |
| | Date |
| | Date |
| | Date |
| | Date |

FAND# FAND034 Rev. 06-18-02



4. If at any time the Borrower is in default, the Lender may, by providing a written notice to the Borrower, notify the Borrower that the Borrower is in default and that the interest which will be charged on the Unpaid Principal Balance may be increased to a yearly rate of **6.500** % beginning on an effective date stated in the notice. That date will be at least 30 days after the date on which the notice is delivered or mailed to the Borrower. If the Borrower defaults, the Lender may, at its election, require the Borrower to pay immediately the Unpaid Principal Balance that remains unpaid at that time, all interest that has accrued but not been paid, and any other sums that are evidenced and secured by the Note and Security Instrument. If the Lender does not require that such payment be made immediately, the Borrower shall pay an increased monthly payment that will be based upon the interest rate stated in this Paragraph 4 instead of the interest rate stated in Paragraph 3. The Borrower acknowledges that the increased rate of interest will only be charged if the Borrower does not meet its obligations under the Note and Security Instrument, as modified by this Modification.

5. Except to the extent that they are modified by this Modification, the Borrower will comply with all of the covenants, agreements and requirements of the Note and the Security Instrument, including without limitation, the Borrower's agreement to make all payments of taxes, insurance premiums, assessments, escrow items, impounds and all other payments that the Borrower is obligated to make under the Security Instrument.

6. Nothing in this Modification shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Modification, the Note and Security Instrument will remain unchanged and in full effect, and the Borrower and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Modification.

7. If one or more riders are executed by the Borrower and recorded together with this Modification, the covenants and agreements of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Modification as if the rider(s) were a part of this Modification.

    [X] 1-4 Family Rider - Assignment of Rents      [ ] Modification Bankruptcy Rider
    [X] Modification Due on Transfer Rider

8. Notwithstanding anything to the contrary contained in the Loan Modification Agreement, the parties hereto acknowledge that if the Borrower(s) has received a discharge order on a Chapter 7 Bankruptcy case, the Borrower(s) may no longer be personally liable for the subject Loan. In addition, if the Borrower(s) obtains a Chapter 7 discharge as a result of a bankruptcy pending at the time the Agreement is executed, Lender also recognizes that the Borrower(s) may not be personally liable for the payment of the Loan. However, the parties acknowledge that the Lender retains certain rights, including but not limited to the right to foreclose its lien under appropriate circumstances. The parties agree that the consideration for this agreement is the Lender's forbearance from presently exercising its rights and pursuing its remedies under the Security Instrument as a result of the Borrower's default of its obligations there under. The parties further acknowledge and agree that nothing herein shall be construed to be an attempt to collect against the Borrower(s) personally or an attempt to reaffirm or revive Borrower's personal liability, which has been or may be discharged by a bankruptcy.

_____  5/11/06 (Date)
**TERRANCE OBIE**                     -Borrower

_____  5·11·06 (Date)
**CALANDRA D. OBIE**                  -Borrower

_____ _____ (Date)
                                     -Borrower

_____ _____ (Date)
                                     -Borrower

NATIONAL CITY MORTGAGE CO.

_____
Name:   **MICHAEL GREASER**              -Lender
Its:    **MORTGAGE OFFICER**

**FREDDIE MAC LOAN MODIFICATION AGREEMENT**
FAND# FRMOD-4 Rev. 10-20-05          Page 4 of 5

Freddie Mac Loan N█████
Loan N█████

## BORROWER ACKNOWLEDGMENT

State of Pennsylvania
County of *Monroe*

On *May 11, 2006*      before me,
personally appeared
**TERRANCE OBIE AND CALANDRA D. OBIE**

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____  PENNSYLVANIA                    (Seal)

NOTARIAL SEAL
N. ████ Notary Public
Stroud Twp. ████ County
My Commission Expires August 11, 2008

## LENDER ACKNOWLEDGMENT

State of **OHIO**
County of **MONTGOMERY**

On *June 5, 2006*      before me,
personally appeared  **MICHAEL GREASER**        , the **MORTGAGE OFFICER**
of █

a                                                              , on behalf of said entity,
personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature _____                              (Seal)
**MICHAEL GREASER, MORTGAGE OFFICER**

*Kristina K. Smith*

**KRISTINA K. SMITH, NOTARY PUBLIC
IN AND FOR THE STATE OF OHIO
MY COMMISSION EXPIRES SEPT. 29, 2008**

*FREDDIE MAC LOAN MODIFICATION AGREEMENT*
FAND# PAFRMOD-5 Rev. 05-16-03                    Page 5 of 5

# CERTIFICATE OF RESIDENCE

I do Certify that the precise address of the within named (Mortgagee/Grantee/Assignee) is:

3232 NEWMARK DRIVE, MIAMISBURG, OHIO 45342

*Shirley Bonner*
Shirley Bonner



# COUNTY OF MONROE

**RECORDER OF DEEDS**
**7th & MONROE STREETS**
**STROUDSBURG, PA 18360**
Area Code (570) 517-3969

Helen Diecidue - Recorder
Mary Ann Lesh - Chief Deputy
Jamie Butz - Deputy

Book - 2294   Starting Page - 6062
* Total Pages - 16

Recorded On 1/24/2007 At 1:34:21 PM

* Instrument Type - MORTGAGE MODIFICATION AGREEMENT

* Grantor - OBIE, TERRANCE
* Grantee - NATIONAL CITY MORTGAGE CO
  User - BLH
* Customer - FIRST AMERICAN
* FEES

| | | | |
|---|---|---|---|
| STATE WRIT TAX | $0.50 | **RETURN DOCUMENT TO:** | |
| RECORDING FEES | $35.00 | **FIRST AMERICAN** | |
| COUNTY ARCHIVES FEE | $2.00 | **1100 SUPERIOR AVE** | |
| ROD ARCHIVES FEE | $3.00 | **CLEVELAND, OH 44114** | |
| TOTAL PAID | $40.50 | | |

TAX ID #
9/15/1/16 1
Total Tax IDs: 1



I Hereby CERTIFY that this document is recorded in the
Recorder's Office of Monroe County, Pennsylvania

*Helen Diecidue*

## THIS IS A CERTIFICATION PAGE

# Do Not Detach

### THIS PAGE IS NOW THE LAST PAGE
### OF THIS LEGAL DOCUMENT

* - Information denoted by an asterisk may change during
the verification process and may not be reflected on this page.

Book: 2294  Page: **6077**



-----------------[Space Above This Line For Recording Data]---------------

# LOAN MODIFICATION AGREEMENT
(Providing for Fixed Interest Rate)

This Loan Modification Agreement ("Agreement"), made this 16th day of July 2002, between Terrance Obie and Calandra D. Obie (" Borrower(s)" ) and National City Mortgage Co.("Lender"), amends and supplements (1) the Mortgage, Deed of Trust or Deed to Secure Debt (the " Security Instrument"), dated December 10, 2001 and recorded in Monroe County, State of Pennsylvania and (2) the Note bearing the same date as, and secured as, and secured by, the Security Instrument, which covers the real and personal property described in the Security Instrument and defined therein as the "Property," located at

808 Knoll Drive, East Stroudsburg, PA 18301
[Property Address]

the real property described being set forth as follows:

See 'Exhibit A' attached.

Consideration of the mutual promises and agreements exchanged, the parties hereto agree as follows (not with standing anything to the contrary contained in the Note or Security Instrument):

1. As of July 31, 2002, the amount payable under the Note and the Security Instrument (the "Unpaid Principal Balance") is Two Hundred Thirty One Thousand Six Hundred and 00/100 Dollars ($231,600.00) consisting of the amount(s) loaned to the Borrower(s) by the Lender and any interest capitalized to date.

2. The Borrower(s) promises to pay the Unpaid Principal Balance, plus interest, to the order of the Lender. Interest will be charged on the Unpaid Principal Balance at the yearly rate of 6.500% from July 31, 2002. The Borrower(s) promises to make the monthly payments of principal and interest of U.S. $1,463.87 beginning on the 1st day of September 2002, and continuing thereafter on the same day of each succeeding month until principal and interest are paid in full. If on August 1, 2032 ("Maturity Date"), the borrower still owes amounts under the Note and the Security instrument, as amended by this Agreement, the Borrower(s) will pay these amounts in full on the Maturity Date.
The Borrower(s) will make such payments at  3232 Newmark Drive Miamisburg, Ohio 45342 or at such other place as the Lender may require.

3. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in the Borrower(s) is sold or transferred and the Borrower(s) is not a natural person) without the Lender's prior written consent, the Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument.

   If the Lender exercises this option, the Lender shall give the Borrower(s) notice of acceleration.  The notice shall provide a period of not less than 30 days from the date the notice is delivered or mailed within which the Borrower(s) must pay all sums

LOAN MODIFICATION AGREEMENT-Single Family- Fannie Mae Uniform Instrument          Form 3179
3/86

secured by this Security Instrument. If the Borrower(s) fails to pay these sums prior to the expiration of this period, the Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on the Borrower(s).

4.  The Borrower(s) also will comply with all other covenants, agreements, and requirements of the Security Instrument, including without limitation, the Borrower's covenants and agreements to make all payments of taxes, insurance premiums, assessments, escrow items, impounds, and all other payments that the Borrower(s) is obligated to make under the Security Instrument; however, the following terms and provisions are forever canceled, null and void, as of the date specified in paragraph No. 1 above:

    (a) all terms and provisions of the Note and Security Instrument (if any) providing for, implementing, or relating to, any change or adjustment in the rate of interest payable under the Note; and

    (b) all terms and provisions of any adjustable rate rider or other instrument or document that is affixed to, wholly or partially incorporated into, or is part of, the Note or Security Instrument and that contains any such terms and provisions as those referred to in (a) above.

5.  Nothing in this Agreement shall be understood or construed to be a satisfaction or release in whole or in part of the Note and Security Instrument. Except as otherwise specifically provided in this Agreement, the Note and Security Instrument will remain unchanged, and the Borrower(s) and Lender will be bound by, and comply with, all of the terms and provisions thereof, as amended by this Agreement.

Witness to National City Mortgage

Witness to National City Mortgage

Witness to Borrower

Witness to Borrower

National City Mortgage Co.
                                (Lender)

BY _____ (Seal)
Danielle N. Rose, Mortgage Officer

_____ (Seal)
Terrance Obie            (Borrower)

_____ (Seal)
Calandra D. Obie         (Borrower)

-------------------------- [Space Below This Line For Acknowledgments] ------

State of  Ohio
County of  Montgomery

Subscribed, sworn and acknowledged to before me by Danielle N. Rose, Mortgage Officer of National City Mortgage Co., (Lender) this _11_ day of July, 2002.

                                _____
                                Notary Public

                    My Commission Expiration Date is: 3-31-06

State of _____                LISA STOVER, Notary Public
County of _____                In and for the State of Ohio
                                    My Commission Expires October 2, 2005

Subscribed, sworn and acknowledged to before me by Terrance Obie and Calandra D. Obie (Borrower(s)) this 13th day of Sept., 2002.

                                _____
                                Notary Public

                    My Commission E _____  LAWRENCE J. ANDERSON 3-31-06
                                    NOTARY PUBLIC OF NEW JERSEY
                                    My Commission Expires